### TOWN OF GEORGETOWN, Appellant–Defendant,

v.

### James Timothy SEWELL, Randy Sewell and Denise Sewell, Appellees–Plaintiffs.

### No. 22A04–0206–CV–289.

Court of Appeals of Indiana.

April 21, 2003.

Christopher R. Whitten, A. Jack Finklea, Scopelitis Garvin Light & Hanson, Indianapolis, IN, Attorneys for Appellant.

Larry R. Church, Wyatt Tarrant & Combs, New Albany, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

The Town of Georgetown ("Georgetown") appeals the judgment of the trial court, which found that Georgetown com-

mitted a taking against Randy and Denise Sewell (collectively, "the Sewells") and James Timothy Sewell ("Timothy"). Georgetown raises several issues, which we consolidate and restate as:

I.   Whether the trial court erred by granting Timothy's motion to amend the complaint to add the Sewells as party plaintiffs; and

II.  Whether the trial court erred by finding that a taking had occurred with respect to tract one of the subject property.

We reverse.

The relevant facts follow. This matter involves property located on Old Lanesville Road in Floyd County (the "subject property"). During the late sixties and early seventies, the subject property was a landfill for the town of Georgetown. The Town Board of Georgetown capped the landfill sometime in the early seventies.

In June of 1985, Georgetown sold the subject property to Jerry Teeter for $2,300.00. When Teeter purchased the subject property, Georgetown had placed no restrictions upon the use of the land. Teeter owned the subject property for approximately eight to ten years. During that time, Teeter applied for and received both a septic system and building permit from Floyd County. He subsequently placed a mobile home on the subject property, where he lived for approximately three to four years.

In May of 1996, Teeter sold the subject property to Keith and Sherry Hertel (collectively, "the Hertels") for $40,000. The Hertels had lived across the street from the subject property for approximately ten years. The Hertels were aware that the subject property had been a landfill, but were unaware of any restrictions regarding the use of the subject property. The Hertels intended to build and sell homes on the subject property. On September 20, 1996, the Hertels obtained a new construction permit for a private sewage disposal system.

In May of 1998, the Sewells purchased a one acre tract of the subject property ("tract one") from the Hertels for $14,000. There is a dispute regarding whether the Hertels informed the Sewells that tract one had previously been a landfill. Keith Hertel claims that he told Randy Sewell that he "could only build a slab type home because [tract one] used to be a landfill." Transcript at 29. However, Randy Sewell stated in his deposition testimony, which was admitted into evidence at trial, that the Hertels never disclosed that tract one had been a landfill.

The Sewells purchased tract one because they intended to give the land to their son, Timothy. Specifically, they intended to build a house for him. The warranty deed indicates that the Hertels conveyed tract one directly to Timothy. On May 26, 1998, the Sewells obtained a new construction permit for a private sewage disposal system from the Floyd County Health Department. On June 3, 1998, the Sewells also obtained a building permit from Georgetown. Barbara Zoeller, the Deputy Clerk, authorized the building permit. When Zoeller issued the building permit she was not aware that tract one had once been a landfill. A few days after Georgetown issued the building permit, Zoeller received phone calls from citizens who were concerned that there was going to be some type of development on the subject property, which had been the Georgetown landfill. On June 17, 1998, Georgetown issued a stop work order for tract one.

In October of 1998, Georgetown scheduled a meeting at the subject property. Zoeller, Keith Hertel, representatives of Georgetown and Floyd County, Hershell

Huff, a member of the Town Board between 1980 and 1984, and Rick Schroeder, a manager with the Indiana Department of Environmental Management ("IDEM"), attended this meeting. Schroeder's deposition testimony, which was admitted into evidence at trial, indicates that on the day of the meeting the subject property appeared normal and stable and was covered with grass and vegetation. However, during the meeting a backhoe operator dug holes in the land and in "every place that was suggested to probe, [they] observed solid waste." *Id.* at 181. Specifically, when discussing the dangers of building on solid waste, Schroeder stated, that:

> If you breach the cover of any area that's been used for solid waste disposal, you increase the potential for precipitation to run through the waste to come in contact with the waste and generate a leachate which is for all practical purposes water that passes through waste and picks up some of it's constituents which then becomes a pollutant that [will] either [ ] go down into the water table or surface and go out to the surface waters of the state.... Also when you have water passing though waste, you can set the conditions for methane gas to be generated because methane gas is a by product of waste decomposing. And methane gas in a [confined] area, be it a crawl space underneath the house, or underneath a mobile home, if it's pinned in tightly, can be an explosive hazard if getting [an ignition] source.

*Id.* at 182. He stated that a house could safely be built on solid waste; however, the landowner would need to "excavate all the solid waste out, [and] bring back in fill dirt." *Id.* at 183. He suspected that this option was not economically practical. When asked whether there was anything that the landowners could do with the subject property, he stated, that, "[i]t can be used for recreational purposes, for grazing purposes, you could put a concrete slab building out there, like a tool shed, [the] type of structure where you wouldn't have the potential for accumulation of gas in a crawl space or a basement." *Id.* at 184.

The Hertels and Timothy appealed the issuance of the stop work order for the subject property to the Georgetown Board of Zoning Appeals ("Board of Zoning Appeals"). At one of the Board of Zoning Appeals meetings, the Hertels questioned why Georgetown had sold the subject property in 1985 if it was not suitable for development. According to Mrs. Hertel, one of the women at the meeting acknowledged that possibly Georgetown should not have sold the property, and a gentleman at the same meeting stated that Georgetown initially sold the subject property so that it could purchase a police car. Moreover, Huff testified that Georgetown did not have IDEM inspect the subject property and placed no restrictions upon the subject property, because "everyone on the board at that time and, ninety nine per cent of the population knew that that was the Town dump." *Id.* at 129. He also stated that, "we put [the subject property] up for bids because we needed the money out of the land ... for a garbage truck." *Id.* at 128. The Board of Zoning Appeals subsequently denied the Hertels' and Timothy's appeal, because "it didn't think it would be proper to allow any homes to be built there." *Id.* at 148.

On January 19, 2000, the Hertels and Timothy filed a complaint for damages from inverse condemnation. On April 16, 2002, after a bench trial, the trial court issued its order. Specifically, the trial court granted Timothy the right to amend his complaint and add the Sewells as party plaintiffs. The trial court also determined that Timothy and the Sewells established

that a taking had occurred with respect to tract one.[1] This appeal ensued.

## I.

■ The first issue is whether the trial court erred by granting Timothy's motion to amend the complaint to add the Sewells as party plaintiffs. The parties disagree regarding the appropriate standard of review. The Sewells argue that we should review the trial court's grant of Timothy's motion to amend the complaint for an abuse of discretion. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *SLR Plumbing & Sewer, Inc. v. Turk,* 757 N.E.2d 193, 197 (Ind.Ct.App. 2001). However, Georgetown argues that we should review the trial court's decision de novo because it involves pure questions of law, namely whether the Sewells are real parties in interest and ultimately whether they have standing. Regardless of which standard of review is applicable, we find that the trial court erred by granting Timothy's motion because the Sewells are not real parties in interest.

■ Standing is a judicial doctrine that centers upon whether the complaining party is the proper party to invoke the court's jurisdiction. *Shourek v. Stirling,* 621 N.E.2d 1107, 1109 (Ind.1993). The plaintiff "must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue." *Higgins v. Hale,* 476 N.E.2d 95, 101 (Ind.1985). Standing is similar to, although not identical to, the real party in interest requirement of Ind. Trial Rule 17.[2] *Pence v. State,* 652 N.E.2d 486, 487 (Ind.1995), *reh'g denied.* A real party in interest is the person who is the true owner of the right sought to be enforced. *E & L Rental Equip., Inc. v. Gifford,* 744 N.E.2d 1007, 1011 (Ind.Ct. App.2001). Specifically, he or she is the person entitled to the fruits of the action. *Id.*

For example, in *Reinking v. Metro. Bd. of Zoning Appeals of Marion County,* 671 N.E.2d 137, 140 (Ind.Ct.App.1996), *reh'g denied,* we addressed the issue of standing and real party in interest in the context of property ownership. There, we confronted the issue of whether a subsequent purchaser of property could challenge the constitutionality of a zoning ordinance that

---

1. The trial court also granted Georgetown's motion to dismiss as to the Hertels, because the Hertels never applied for a building permit for their portion of the subject property. The Hertels did not appeal the trial court's ruling.

2. Ind. Trial Rule 17 states in pertinent part, that:

A. Every action shall be prosecuted in the name of the real party in interest.

(1) An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought, but stating his relationship and the capacity in which he sues.

(2) When a statute provides for an action by this state on the relation of another, the action may be brought in the name of the person for whose use or benefit the statute was intended.

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time after objection has been allowed for the real party in interest to ratify the action, or to be joined or substituted in the action. Such ratification, joinder, or substitution shall have the same effect as if the action had been commenced initially in the name of the real party in interest.

adversely affected the value of the property when the ordinance was adopted prior to purchase. *Id.* We acknowledged that the purpose of standing and the real party in interest requirement is to prevent the filing of meritless and frivolous suits, and added, that, "in order to have standing, [the plaintiffs] must show that they are the real party in interest with a substantial, direct, or immediate interest in the outcome of the suit." *Id.* We held that, "the [plaintiffs] lack standing because the taking occurred before they acquired the property. That is, the [plaintiffs] were not the owners of the lot when the taking occurred." *Id.; see also Bowen v. Metro. Bd. of Zoning Appeals in Marion County,* 161 Ind.App. 522, 527–528, 317 N.E.2d 193, 197–198 (1974) (holding that a lessee did not have standing to request a variance because its interest did not qualify as a real party in interest), *reh'g denied.*

Here, the record clearly establishes that although the Sewells, not Timothy, purchased tract one, they never obtained a legal interest in the property. This is true even though the Sewells indicated that they were the owners of tract one on the applications for a septic and building permit, which the Floyd County Health Department and Georgetown respectively granted. The Sewells never owned tract one, and more importantly, Timothy was the sole owner of tract one at the time of the alleged taking. Moreover, the warranty deed indicates that the Hertels conveyed tract one directly to Timothy. Further, Timothy admitted in his motion for leave to file an amended complaint, that, "[the Sewells] gifted this property to [Timothy] and assigned all interest and rights to the property to [Timothy]." Appellant's Appendix at 264. Therefore, the Sewells, like the plaintiffs in *Reinking,* are not the true owners of the right that is sought to be enforced, because "they were not the owners of the lot when the taking occurred." 671 N.E.2d at 140. As such, they are not parties in interest and, therefore, have no standing to be a party to this suit. Accordingly, the trial court's decision allowing Timothy to amend the complaint to add the Sewells is clearly against the logic and effect of the facts and circumstances before the court, and, accordingly, the trial court erred in granting Timothy leave to amend his complaint to add the Sewells as party plaintiffs.

## II.

The second issue is whether the trial court erred by finding that a taking had occurred with respect to tract one of the subject property. We review the trial court's finding of a taking for an abuse of discretion. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Turk,* 757 N.E.2d at 197.

Inverse condemnation is a process provided by statute to allow persons to be compensated for the loss of property interests taken for public purposes without use of the eminent domain process. It serves to provide a remedy for takings of property that would otherwise violate Art. 1, § 21 of our state constitution and the Fifth Amendment of the United States Constitution as made applicable to the states by the Fourteenth Amendment. Specifically, Ind.Code 32–24–1–16,[3] which provides the statutory remedy for inverse condemnation, states that:

**3.** Ind.Code § 32–24–1–16 was formerly Ind. Code § 32–11–1–12. Ind.Code § 32–24 was recently added to the Ind.Code as a new article by Pub.L. No. 2–2002, § 9 (effective July 1, 2002).

A person having an interest in property that has been or may be acquired for a public use without the procedures of this article or any prior law followed is entitled to have the person's damages assessed under this article substantially in the manner provided in this article.

■ There are two stages in an action for inverse condemnation. *City of Hammond, Lake County v. Drangmeister*, 173 Ind.App. 476, 477, 364 N.E.2d 157, 159 (1977). The first stage involves the issue of whether a taking of property has occurred. *Id.* at 478, 364 N.E.2d at 159. Specifically, the landowner must show that he or she has an interest in land that has been taken for a public use without having been appropriated under eminent domain laws. *Id.* If the trial court finds that a taking has occurred, then the matter proceeds to the second stage where the court appoints appraisers and damages are assessed. *Id.*

■ Here, Timothy argues that he is the victim of a regulatory taking. A taking includes any substantial interference with private property that destroys or impairs one's free use and enjoyment of the property or one's interest in the property. *Bd. of Comm'rs of Vanderburgh County v. Joeckel*, 407 N.E.2d 274, 278 (Ind.Ct.App. 1980). The Fifth Amendment to the United States Constitution, applicable to the states via the Fourteenth Amendment, guarantees that private property shall not "be taken for public use, without just compensation." Thus, "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Bd. of Zoning Appeals, Bloomington, Ind. v. Leisz*, 702 N.E.2d 1026, 1028 (Ind.1998) (quoting *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 414–415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922)). "Although no precise rule determines when property has been taken, the question necessarily requires a weighing of private and public interests." *Leisz*, 702 N.E.2d at 1028 (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260–61, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)).

In *Leisz*, our supreme court acknowledged that there are "two discrete categories of regulations that violate the Takings Clause regardless of the legitimate state interest advanced." 702 N.E.2d at 1028. The first category encompasses regulations that require the property owner to suffer a physical "invasion" of his or her property. *Id.* at 1028–1029. The second category encompasses regulations that deny all economically beneficial or productive use of land. *Id.* at 1029.

■ Here, Timothy has not suffered a physical invasion of his property as a result of a regulation; therefore, we must determine whether the regulation has denied Timothy of all economically beneficial use of his property. Where a regulation places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex set of factors, including: (1) the regulation's economic effect on the landowner, (2) the extent to which the regulation interferes with reasonable investment-backed expectations, and (3) the character of the government action. *Ragucci v. Metro. Dev. Comm'n of Marion County*, 702 N.E.2d 677, 683 (Ind. 1998).

### A.

■ First, we examine the economic impact of the regulation. Timothy argues that Georgetown's denial of a building permit constitutes a taking because it denies Timothy of economically viable use of his property. Specifically, he argues that, "[a]s a result of [Georgetown's] actions, the property purchased by the Se-

wells for $14,000 is virtually, if not completely, worthless." Appellee's Brief at 17. A landowner is not entitled to the highest and best use of his land, and a taking only occurs when the land use regulation prevents all reasonable use of the land. *Dep't of Natural Res. v. Ind. Coal Council, Inc.*, 542 N.E.2d 1000, 1004 (Ind.1989), *cert. denied*, 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990). Moreover, a diminution of property value, standing alone, will not establish a taking. *Ragucci*, 702 N.E.2d at 683.

Georgetown argues that economically viable uses for tract one do exist. For example, Georgetown contends that Timothy could build a slab type structure such as a tool shed or he could use the property for recreational or grazing activities. Timothy argues however that he can "receive *no* economic benefit from [tract one] being used as a pasture or as a park." Appellee's Brief at 17 (emphasis in original).

To support his argument, Timothy cites to *Ragucci v. Metro. Dev. Comm'n of Marion County*, where the owner of an apartment building claimed that he was the victim of a regulatory taking because a zoning ordinance only allowed him to operate his apartment building as a five dwelling unit as opposed to an eight dwelling unit. 702 N.E.2d at 680. Our supreme court disagreed and stated, that, "it pales in comparison to other cases in which the Supreme Court has nonetheless found no taking." *Id.* at 683; *see, e.g., Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 384, 47 S.Ct. 114, 117, 71 L.Ed. 303 (1926) (upholding a zoning ordinance that created a 75% diminution in value); *Penn Central Trans. Co v. City of New York*, 438 U.S. 104, 130, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1978) (upholding a zoning ordinance that denied property owners of a valuable property interest that significantly inhibited property owner's ability to

develop the property). Moreover, Indiana courts, like the United States Supreme Court, have also failed to find a taking where the regulation significantly diminished the value of property. *See, e.g., Leisz*, 702 N.E.2d at 1030 (failing to find a taking where "[plaintiffs'] property continues to have an economically viable use, even if it is somewhat diminished"); *Taylor–Chalmers, Inc. v. Bd. of Comm'rs of LaPorte County*, 474 N.E.2d 531, 532 (Ind. Ct.App.1985) (holding that a rezoning of plaintiff's property from "commercial or accommodation business" to "light industrial or agricultural" did not amount to a taking, although the plaintiff may have been denied the "highest and best use of his land"), *reh'g denied*.

Timothy argues that "the economic loss suffered by the Sewells is much more severe than that sustained by Mr. Racucci." Appellee's Brief at 17. In particular, Timothy argues that "the only feasible use of [tract one] would be for recreational or grazing purposes." *Id.* at 6. Specifically, he points to Schroeder's deposition testimony where he recommended that ideally the landowner should not disturb the cap at all; thereby, suggesting that the landowner not build a slab type structure.

We disagree with the notion that tract one has no economically viable use. Timothy can use tract one for grazing or recreational purposes. Moreover, he can also build a slab type structure if he takes the appropriate safe guards, such as "bringing in additional fill so that the cover [will not be] purged." Transcript at 191. As such, like the plaintiffs in *Leisz*, Timothy's "property continues to have an economically viable use, even if it is somewhat diminished." *Id.* at 1030.

## B.

■ Next, we consider the extent to which the regulation interferes with rea-

sonable investment-backed expectations. A "property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers." *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1027, 112 S.Ct. 2886, 2899, 120 L.Ed.2d 798. The Supreme Court has held that investment-backed expectations were not frustrated when a landowner bought a piece of land expecting to develop it in a certain manner and the municipality subsequently enacted a zoning ordinance seriously restricting those plans. *See Agins,* 447 U.S. at 257, 100 S.Ct. at 2138 (holding that a zoning ordinance did not diminish a property owner's reasonable investment-backed expectations to the extent necessary to establish a regulatory taking).

■■■ Our supreme court has also considered the issue. For example, in *Town Council of New Harmony v. Parker,* 726 N.E.2d 1217, 1221 (Ind.2000), our supreme court examined whether a town's refusal to install municipal utility services for a particular parcel of property amounted to a taking. In holding that a taking had not occurred, our supreme court stated, that, "[plaintiff] had no reasonable investment-backed expectations that must be recognized or compensated under the Fifth Amendment. Property owners are charged with knowledge of ordinances that affect their property." *Id.* at 26. (internal citation omitted). Moreover, in *Ragucci,* 702 N.E.2d at 684, our supreme court held that a municipal ordinance did not amount to a taking, in part because, "any interference with [the landowner's] investment-backed expectations is mitigated, at least to some extent, by the possibility of recovery from a prior owner." Moreover, "the investment-backed expectations of [the landowner's] predecessors are frustrated no more than a landowner who bought a piece of land expecting to develop it in a certain manner, only to later find the municipality enact a zoning ordinance that seriously restricts those plans." *Id.*

■■■ Here, Timothy fails to establish that his investment-backed expectations have been frustrated to the extent necessary to establish a taking in violation of the Fifth Amendment. Property owners are charged with knowledge of relevant statutory provisions affecting the control or disposition of their property. *Hannon v. Metro. Dev. Comm'n of Marion County,* 685 N.E.2d 1075, 1081 (Ind.Ct.App.1997). Waste dumps are heavily regulated for the protection of human health and the environment. *See* Ind. Admin. Code tit. 329, r. 10 (outlining IDEM guidelines for solid waste management). Specifically, 329 IAC § 10–23–3(c)(3) provides, in pertinent part, that: "[p]ost-closure use of the property must not disturb the integrity of the final cover, liner, or any other component of the containment system, or the function of the monitoring system, unless necessary to comply with this article."

Furthermore, Timothy, the only party plaintiff to this appeal, did not purchase tract one, nor did he secure any of the necessary permits to begin construction of the premises. Moreover, the record is void of any information regarding Timothy's intent to develop tract one or to alter its current state. As such, we cannot say that Georgetown's issuance of a stop work order on a building permit for tract one and any subsequent denial of Timothy's reasonable investment-backed expectations constituted a taking in violation of the Fifth Amendment.

### C.

■■■ Finally, we consider the character of the government action. Our supreme court noted that a "taking is more readily found when the governmental action is

'characterized as a physical invasion,' and less likely when the 'interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.' " *Ragucci,* 702 N.E.2d at 684 (quoting *Penn. Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631). Likewise, government possesses the inherent "police power to enact laws, within constitutional limits, to promote order, safety, health, morals, and the general welfare of society." *Foreman v. State ex rel. Dep't. of Natural Res.,* 180 Ind.App. 94, 100–101, 387 N.E.2d 455, 461 (Ind.Ct.App. 1979).

In *Ragucci,* our supreme court, when discussing the character of the governmental action, concluded that the ordinance "did not single out the [property], but rather applie[d] to all nonconforming (and conforming) uses in the same area." 702 N.E.2d at 684. Moreover, in *Zahm v. Peare,* 502 N.E.2d 490, 494 (Ind.Ct.App. 1985), we held that the board's denial of a sewage permit for plaintiff's property did not amount to a taking. There, we emphasized that "the prohibition of sand filter systems prevents the spread of contagious disease from house to house through untreated sewage effluent." *Id.* We concluded that the enforcement of the ordinance was essential for the protection of public health. *Id.*

Here, like the ordinance in *Ragucci,* the regulations detailing the guidelines for solid waste management apply to all Indiana property currently or previously used as a landfill. Furthermore, when Georgetown issued the stop work order it did not act arbitrarily; rather, it acted in accordance with the recommendation of representatives from the IDEM. Moreover, like the board in *Zahm,* Georgetown issued the stop work order to prohibit a potential threat to human health and safety. In addition, Schroeder testified that tract one is not suitable for human habitation because it could be dangerous to human health as well as the environment. As such, an examination of the character of the government action reveals that Georgetown acted within its police power to protect and promote health and safety.

Therefore, after a careful consideration of: (1) the regulation's economic effect on the landowner, (2) the extent to which the regulation interferes with reasonable investment-backed expectations, and (3) the character of the government action, we hold that Georgetown's issuance of a stop work order for tract one did not amount to a taking in violation of the Fifth Amendment. As such, the trial court's finding that a taking occurred with respect to tract one of the subject property was clearly against the logic and effect of the facts and circumstances before the court. Because we hold that a taking has not occurred, Timothy's inverse condemnation claim fails.

For the foregoing reasons, we reverse the judgment of the trial court.

Reversed.

SULLIVAN and KIRSCH, JJ., concur.