**OLD ROMNEY DEVELOPMENT CO., Appellant–Plaintiff,**

**v.**

**TIPPECANOE COUNTY, Indiana, and State of Indiana, Appellees–Defendants.**

**No. 54A04–0406–CV–325.**

Court of Appeals of Indiana.

Nov. 30, 2004.

---

2. Since we find it necessary to reverse, we need not address the other issue raised by C.S.

David A. Rosenthal, Lafayette, IN, Attorney for Appellant.

Douglas J. Masson, Hoffman, Luhman & Masson, P.C., Lafayette, IN, Attorney for Appellee Tippecanoe County.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee State of Indiana.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Old Romney Development Co. ("Old Romney") appeals the trial court's denial of its motion for partial summary judgment and, simultaneous, grant of summary judgment to Appellees–Defendants, Tippecanoe County and the State of Indiana (collectively, "Appellees"). We affirm.

### Issue

Old Romney raises one issue on appeal, which we restate as whether the trial court erroneously granted summary judgment to Appellees because Appellees' act of closing the intersection of U.S. 231 and County Road 300 South constituted a regulatory taking for which Old Romney is entitled to damages under the doctrine of inverse condemnation.

### Facts and Procedural History

The relevant facts are undisputed. This lawsuit arises from the Indiana Department of Transportation's decision to relocate and construct U.S. 231 in Tippecanoe County. At all times pertinent to this action, Old Romney owned property adjacent to County Road 300 South. Prior to March 18, 1994, Old Romney also owned a parcel of real estate located at the northeast corner of County Road 300 South ("Parcel"). On March 18, 1994, Old Romney sold the Parcel to the State, in exchange for $84,132.00, for the construction of U.S. 231. During the construction of U.S. 231, in early 1999, the State provided access to U.S. 231 at County Road 300

South. However, on or about March 19, 1999, the State decided to close the intersection of U.S. 231 and County Road 300 South (hereinafter referred to as the "Intersection"), and Tippecanoe County approved such closure.

At all times pertinent to this appeal, Old Romney has not enjoyed direct access to U.S. 231. Rather, after the completion of U.S. 231 and prior to the closing of the Intersection, Old Romney could access U.S. 231, via the Intersection, by exiting onto County Road 300 South and traveling east to U.S. 231. Presently, however, because the Intersection is closed, to access U.S. 231, Old Romney must exit onto County Road 300 South, which is an unimproved gravel road, travel 1 mile east to Old Romney Road, 1.5 miles north to State Road 25, and, then, .7 miles east[1] to U.S. 231.

On September 8, 1999, Old Romney filed a complaint against Appellees alleging that the closure of the Intersection, which eliminated its access to U.S. 231, resulted in a taking for which it is entitled to compensation in the amount of $750,000.00. Specifically, Old Romney alleged that "[s]uch closure eliminated the sole method by which [it] could have ingress and egress from its property to the 300 South frontage." Tippecanoe App. at 2. On May 29, 2003, Old Romney filed a partial motion for summary judgment to address the issue of whether the closure of the Intersection constituted a taking. In response, on June 26, 2003, Tippecanoe County filed a cross-motion for summary judgment. On De-

---

1. In his affidavit, which was properly designated to the trial court, Fritz Holzgrefe—a general partner of Old Romney—asserted: "to get to the New U.S. 231, I must drive 1 mile east on unimproved, hazardous 300 S. to Old Romney Road; then 1.5 miles North to SR 25, then *West* .7 miles to U.S. 231." Tippecanoe App. at 19 (emphasis added). How-

ever, our review of the plat of land at issue, which was also designated into evidence, reveals that, from State Road 25, one must travel *east* to U.S. 231. Based upon the plat and the fact that the parties do not dispute the direction of State Road 25 vis à vis U.S. '231, we assume that one must travel .7 miles east on State Road 25 to arrive at U.S. 231.

cember 10, 2003, after conducting a hearing on the competing motions for summary judgment, the trial court denied Old Romney's partial motion for summary judgment and granted summary judgment to Appellees. This appeal by Old Romney ensued.

## Discussion and Decision

### I. Summary Judgment Standard of Review

On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56(C), (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997). Specific

findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin*, 725 N.E.2d 455, 458 (Ind.Ct.App.2000), *trans. denied*. Rather, a grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

In addition, "[t]he fact that the parties [made] cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind.Ct.App.2000).

### II. Analysis

On appeal, Old Romney argues that the trial court erred by denying its motion for summary judgment and by granting summary judgment to Appellees because Appellees' act of closing the Intersection resulted in a taking for which Old Romney is entitled to compensation under the doctrine of inverse condemnation. Inverse condemnation is a process provided by statute that allows individuals to be compensated for the loss of property interests taken for public purposes without use of the eminent domain process. *Town of Georgetown v. Sewell*, 786 N.E.2d 1132, 1138 (Ind.Ct.App.2003). It serves to provide a remedy for takings of property that would otherwise violate Article I, Section 21 of the Indiana Constitution, which provides, in relevant part, that: "No person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered."

■ Specifically, Indiana Code Section 32–24–1–16, which provides the statutory remedy for inverse condemnation, provides that:

A person having an interest in property that has been ... for a public use without the procedures of this article or any prior law followed is entitled to have the person's damages assessed under this article substantially in the manner provided in this article.

There are two stages in an action for inverse condemnation. *Sewell,* 786 N.E.2d at 1139. The first stage involves determining whether a taking of property has occurred. *Id.* Specifically, the landowner must show that he or she has an interest in land that has been taken for a public use without having been appropriated under eminent domain laws. *Id.* If the trial court finds that a taking has occurred, the matter proceeds to the second stage where the court appoints appraisers and assesses damages. *Id.*

■ Here, Old Romney contends that Appellees' act of closing the Intersection constituted a taking because it eliminated Old Romney's access to U.S. 231. In particular, Old Romney first asserts that Appellees' act of closing the Intersection amounted to a taking because Old Romney

sold the parcel to the State "in reliance on representations of the State that an interchange would be built at the new U.S. 231 and 300 S." Appellant's Reply Br. at 1. However, we note that the warranty deed executed by Old Romney and the State for the sale of the Parcel does not include such a representation.[2] As such, any evidence, including affidavits, purporting to show the existence of such representation is barred by the Statute of Frauds.

■ The Statute of Frauds provides, in pertinent part, that a person may not bring an action involving any contract for the sale of land "unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent." Ind.Code § 32–21–1–1. Our courts have long applied the principle that an agreement to convey land is subject to the Statute of Frauds' writing requirement. *Brown v. Branch,* 758 N.E.2d 48, 50–51 (Ind.2001). Because any representation regarding the interchange falls within the Statute of Frauds and because it was apparently not in writing, it is unenforceable.[3] *Id.* at 51.

2. The document relied upon by Old Romney to support this assertion, which appears to be a deed, provides that the sale of certain land is "[s]ubject to the right to use the future street." Tippecanoe App. at 21. However, we cannot ascertain from where this document came. Indeed, the instrument immediately following the document in the appendix, which appears to be a continuation of the document, provides: "Grantor has caused this Deed to be executed this 5th day of July, 1991." *Id.* at 22. Yet, the undisputed evidence reveals that Old Romney conveyed the Parcel to the State in 1994, which contains no such reservation.

In addition, Old Romney directs our attention to Holzgrefe's affidavit providing, in part:

"That [Old Romney and the State] discussed that U.S. 231 ingress/egress would be provided along CR 300 S. and the price was negotiated accordingly and a Deed to the State was delivered on May 12, 1994." *Id.* at 17. In any event, we note that, despite the closure of the Intersection, Old Romney has access to use the "future street," assuming such street is U.S. 231.

3. We further observe that when oral promises fall within the Statute of Frauds, they may be enforced under the doctrine of promissory estoppel, which requires: (1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and

■ Old Romney next asserts that a taking occurred when the Intersection was closed because, although it has retained access to U.S. 231, such access is circuitous and unreasonable. To support this argument, Old Romney relies heavily upon our supreme court's opinion in *State v. Tolliver*, 246 Ind. 319, 205 N.E.2d 672 (1965). There, the plaintiffs owned property, which was located several hundred feet south of highway construction, on which they operated an ornamental iron prefabrication business. *Id.* at 321, 205 N.E.2d at 673. As part of its business operation, trucks transporting raw materials to and from the factory traveled over Foster Road to get to U.S. Highway 136. *Id.* However, in 1959, the State and Vermillion County closed Foster Road between the plaintiff's property and U.S. Highway 136. *Id.* at 322, 205 N.E.2d at 673. After the closure of Foster Road, the plaintiffs sole means of ingress and egress from their property was to the south on Foster Road, which required the crossing of a bridge that was in "bad shape" and had a weight capacity far below the loads required in conducting the iron prefabricating business. *Id.* In addressing the issue of whether the closing of Foster Road constituted a compensable taking of the plaintiffs' property, the *Tolliver* court adopted, in relevant part, the following legal principles:

> [O]ne whose property abuts upon a roadway, a part of which is closed or vacated has no special damage if his lands do not abut upon the closed or

vacated portion so that his right of ingress and egress is not affected. If he has the same access to the general highway system as before, his injury is the same in kind as that suffered by the general public and is not compensable. It is damnum absque injuria.[4]

\* \* \* \* \*

[However,] a property owner suffers a compensable damage on account of the construction or vacation of a public road when egress and ingress to his property are cut off or interfered with and he has no other reasonable means of access. The right of access under such circumstances is property which cannot be taken from him without compensation.

*Id.* at 329, 331, 205 N.E.2d at 676, 678.

Because the alternative route, via the bridge, was insufficient to support the plaintiff's business operations and, therefore, not a reasonable outlet, the *Tolliver* court held that, under those exceptional circumstances, the property owner had suffered a compensable damage by the closing of the short stretch of county road between the plant and the main highway. *Id.* at 332, 205 N.E.2d at 678. In so holding, the *Tolliver* court noted:

> In view of the insufficient alternate route which was the only remaining outlet available to [the plaintiffs,] we must conclude this injury to [plaintiffs'] steel fabricating plant was far greater and of a kind and nature different from the injury suffered by the general public

(5) injustice can be avoided only by enforcement of the promise. *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind.2001). However, to establish an estoppel sufficient to remove the case from the operation of the Statute of Frauds, Old Romney must show that Indiana's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer,

but the infliction of an unjust and unconscionable injury and loss. *Id.* It has not met this burden in this case.

4. The *Tolliver* court explained that the doctrine of "damnum absque injuria" provides that the plaintiffs "may have suffered a damage, but it was without legal injury." 246 Ind. at 326, 205 N.E.2d at 675.

and therefore comes within the exception to damnum absque injuria so as to be compensable. In fact, under these exceptional circumstances, the closing of the highway had the effect of depriving [the Plaintiffs] of any suitable access to their steel fabricating business.

*Id.*[5]

In the present case, unlike in *Tolliver*, Old Romney's right of access to U.S. 231 has not been cut off or interfered with such that it has no other reasonable means of access. Indeed, Old Romney concedes that it has a circuitous access to U.S. 231, via State Road 300 South, Old Romney Road, and State Road 25. Accordingly, Old Romney can still reach its land by the public road system, although the distance will be greater and the route circuitous. Because Old Romney retains a reasonable means of accessing U.S. 231, it has failed to demonstrate that a compensable taking has occurred.[6] Accordingly, the trial court did not err by denying Old Romney's partial motion for summary judgment and by granting summary judgment to Appellees.

For the foregoing reasons, we affirm the trial court's summary judgment in favor of Appellees on Old Romney's claim for inverse condemnation.

Affirmed.

SHARPNACK, J., and MAY, J., concur.

---

**5.** In this vein, Old Romney also contends that the present action is "similar to the facts in [*Jordan*] whereby access was denied and a taking was determined." Appellant's Br. at 12. However, the *Jordan* court found that no taking had occurred by the widening of a highway because the plaintiffs did not have a leasehold interest in the property at issue. *State v. Jordan*, 247 Ind. 361, 369, 215 N.E.2d 32, 36 (1966).

**6.** Old Romney appears to argue that its access to U.S. 231 is unreasonable because State Road 300 South is unsafe. We reject this argument, however, because regardless of whether the Intersection is opened or closed, Old Romney's access to U.S. 231 is dependent upon its use of State Road 300 South.