Dianna REAGAN, et al.,
Respondents/Cross–
Appellants,

v.

COUNTY OF ST. LOUIS, Missouri,
Appellant/Cross–Respondent.

No. ED 85763.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 30, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 9, 2006.

Case Transferred to Supreme Court
Sept. 26, 2006.

Case Retransferred to Court of
Appeals Feb. 1, 2007.

Original Opinion Reinstated
Feb. 6, 2007.

Bonnie Joyce Kelley, Assistant County Conselor, Clayton, MO, for appellant.

Kevin Lee Fritz, St. Louis, MO, for respondent.

BOOKER T. SHAW, Judge.

St. Louis County ("County") appeals from the trial court's judgment in favor of Dianna Reagan and M.T.C. Construction, Inc. (collectively "Landowner").[1] The County contends the trial court erred in finding that its rezoning of Landowner's property constituted a taking without just compensation pursuant to Article I, Section 26 of the Missouri Constitution, and in awarding attorney's fees and $65,300 in damages to Landowner. In her cross-appeal, Landowner contends the trial court erred in failing to find the County's actions also violated her substantive due process rights, and in failing to award her damages under 42 U.S.C. Section 1983. We reverse in part and affirm in part.[2]

### Facts and Procedural History

On April 23, 1999, Landowner purchased a long, narrow strip of adjoining lots ("the property") in St. Louis County for $134,000, with the intention of constructing an office building for her company. At the time she purchased it, the property was zoned M–1 Industrial, and an office building was a permissible use of the property. In preparation for construction, Landowner removed asbestos, demolished three dilapidated structures, and paid taxes and insurance premiums on the property.

In April 2001, a County councilman introduced a resolution to rezone Landowner's property to residential, after receiving complaints from homeowners in the neighboring area. A public hearing was held, where eighty-five people expressed that they were in favor of the resolution, with three people in opposition. Landowner attended the public hearing and submitted written comments in opposition to the rezoning. After the public hearing, the County Planning Commission issued a report, recommending that Landowner's property be rezoned to R–3 Residential. The report noted that Landowner's property was located between two residential subdivisions, and concluded that residential zoning was appropriate for that location. Thereafter, the County Council voted to rezone Landowner's property to R–3 Residential, effective July 2001.

Landowner filed suit against the County in August 2001, alleging that the County's rezoning constituted an unconstitutional taking without just compensation of her property and violated her substantive due process rights.[3] While Landowner's suit

---

1. Dianna Reagan is the sole shareholder, officer and director of M.T.C. Construction, Inc.

2. Landowner's motion for award of attorney's fees and expenses on appeal is denied.

3. Landowner's Second Amended Petition also included counts for invalid zoning ordinance and equitable estoppel. However, at Landowner's request, the trial court dismissed these counts.

was still pending, Landowner sold the property in September 2002 for $171,969.31. In December 2004, the trial court entered its judgment, finding that although the County had not violated Landowner's substantive due process rights, it had effected a taking of Landowner's property without just compensation, in violation of Article I, Section 26 of the Missouri Constitution. The trial court ordered the County to pay $65,300 in damages and attorney's fees to Landowner. This appeal follows.

### Analysis

The County raises three points on appeal. We only address the County's first point, as it is dispositive of the appeal.[4] In its first point, County argues the trial court erred in finding that it violated Article I, Section 26 of the Missouri Constitution[5] by taking Landowner's property without just compensation.

■■■ "Zoning, rezoning, and refusals to rezone are legislative acts. Our standard of review is *de novo*, with deference, however, to the ability of the trial court to assess credibility." *J.R. Green Properties, Inc. v. City of Bridgeton*, 825 S.W.2d 684, 686 (Mo.App. E.D.1992). We will affirm the trial court's judgment if it is sustainable for any reason supported by the record. *Preferred Laser Services, Inc. v. Abate*, 117 S.W.3d 678, 681 (Mo.App. E.D. 2003).

■■■ A regulatory taking occurs when a regulation enacted by the government goes too far. *Clay County ex rel. County Com'n v. Harley and Susie Bogue, Inc.*, 988 S.W.2d 102, 106 (Mo.App. W.D.1999). "There are no 'set formulas' for determining when a regulation goes too far. Generally, courts make that determination on a case-by-case basis." *Id.* (internal citations omitted). There are two situations where a landowner is entitled to compensation for a *per se* regulatory taking without a case-specific inquiry. *Id.* These two *per se* situations are when: (1) the government causes a landowner to suffer an actual physical invasion of her property; and (2) a regulation completely deprives a landowner of all economically beneficial or productive use of her land. *Id.* at 107. In the case at bar, both parties agree that Landowner did not suffer a *per se* taking as a result of the County's rezoning.

### Penn Central Balancing Test

■■■ Where no *per se* taking has occurred, that is, where a regulation places limits on the landowner's property, but falls short of eliminating all economically beneficial use, courts must make a case-specific factual inquiry, utilizing three factors, to determine whether the government's regulation resulted in a compensable taking of the landowner's property. *See Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). These factors are (1) "the economic impact of the regulation;" (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;"[6] and (3) "the character of

---

4. County's other two points on appeal allege that the trial court erred in calculating damages and in awarding attorney's fees and costs to Landowner.

5. Article I, Section 26 of the Missouri Constitution states, in relevant part, "private property shall not be taken or damaged for public use without just compensation."

6. The United States Supreme Court has fluctuated between the phrases "distinct investment-backed expectations" and "reasonable investment-backed expectations." Initially, the Court enunciated the factor as "distinct investment-backed expectations." *Penn Central*, 438 U.S. at 124, 98 S.Ct. 2646. However, the Court modified the word "distinct" to "reasonable" in *Kaiser Aetna v. United States*,

the governmental action." ("*Penn Central* balancing test") *Id.* The ultimate purpose of the *Penn Central* balancing test is to identify "regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005).

■ None of the factors in the *Penn Central* balancing test are singularly dispositive. *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 327 n. 23, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002); *Palazzolo v. Rhode Island*, 533 U.S. 606, 633–35, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (O'Connor, J., concurring). We must carefully examine and weigh all three factors in this case to determine whether the County's rezoning of Landowner's property constituted a taking without just compensation. Because we have not found any Missouri case directly on point, we will look to the United States Supreme Court and other states for guidance in applying the *Penn Central* balancing test to this case.

■ Under the first factor in the *Penn Central* balancing test, we evaluate the economic impact of the County's rezoning on Landowner. Here, the trial court determined the County's change in zoning reduced Landowner's property value by $65,300, or about 30%. Diminution in property value alone, however, does not establish a taking. *Penn Central*, 438 U.S. at 131. " 'Disparity in values between residential and commercial uses will always exist,' " yet the government is not required to maintain zoning so that a landowner may enjoy the most beneficial use of

her property. *Dorman v. Township of Clinton*, 269 Mich.App. 638, 714 N.W.2d 350, 357–58 (2006) (internal citations omitted). Determining the extent of a regulation's economic impact is "resolved by focusing on the uses the regulations permit." *Penn Central*, 438 U.S. at 131, 98 S.Ct. 2646.

For example, in *Dorman*, landowner purchased property zoned "Light Industrial," intending to build a public storage business on the property. *Dorman*, 714 N.W.2d at 354, 355. After landowner began preparing the property for construction, the township's planning commission rezoned the property to "Residential Multiple." *Id.* at 355. Landowner sued, claiming that the township's rezoning constituted a regulatory taking without just compensation because it limited the potential use of his property, thereby significantly decreasing the property's value. *Id.* The Michigan Court of Appeals disagreed with landowner. The court found that for landowner to meet the first factor of the *Penn Central* test, he must show " 'the property was either unsuitable for use as [re]zoned or unmarketable as [re]zoned.' " *Id.* at 358 (internal citations omitted). Because the landowner's property was located in an established residential area, and there was no evidence indicating that the property was unsuitable for residential development, the court decided the economic impact of the township's rezoning of landowner's property to "Residential Multiple" was insufficient to support his claim that the rezoning constituted a taking. *Id.*

A similar situation also arose in *Town of Georgetown v. Sewell*, 786 N.E.2d 1132 (Ind.App.2003). There, landowners sought to build a house on their property. *Id.* at

444 U.S. 164, 175, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979). Since then, the Court appears to

use the phrases interchangeably.

1135. After landowners began construction, the township learned the property had once been a landfill, and issued a stop work order. *Id.* Landowners filed suit, complaining the township had effected a taking of their property. *Id.* at 1136–37. The Indiana court of appeals disagreed. The court found that "a taking only occurs when the land use regulation prevents all reasonable use of the land." *Id.* at 1140. Because the landowners' property could still be used for grazing or recreational purposes, or for a slab type structure, the court determined that the property merely sustained a somewhat diminished economic viability, but not a sufficient economic loss to support a takings claim. *Id.*

Applying the analysis of *Dorman* and *Sewell* to this case, we find the economic impact of the County's rezoning insufficient to support Landowner's claim. Landowner's property retained a significant use as residential property after the rezoning. It is undisputed that the property was economically viable as residentially zoned property. Landowner purchased the property for $134,000, and was able to sell it as residential property three-and-a-half years later for $171,969.31, a 28% appreciation in value. Accordingly, we find the economic impact of the rezoning of the property insufficient to support Landowner's takings claim. Therefore, the first factor in the *Penn Central* balancing test favors the County.

The second factor of the *Penn Central* balancing test is the extent to which the County's rezoning interfered with Landowner's investment-backed expectations. "[T]he courts have struggled to adequately define" the term "reasonable investment-backed expectations." *Philip Morris, Inc. v. Reilly,* 312 F.3d 24, 36 (1st Cir.2002).[7] Justice O'Connor provided one of the most comprehensive explanations of the term's meaning in her concurring opinion in *Palazzolo,* 533 U.S. at 632–36, 121 S.Ct. 2448. Although the facts in *Palazzolo* are not on point with the facts in the case before us, we find Justice O'Connor's analysis applicable and instructive here. In *Palazzolo,* the Court decided that a landowner could challenge a government regulation as a compensable taking, even when the landowner acquired the property after the regulation's effective date. *Id.* at 626–32, 121 S.Ct. 2448.

In her concurring opinion, Justice O'Connor advised that when evaluating a landowner's investment-backed expectations, courts should not only consider the regulations in place at the time the landowner acquires her property, but also the nature and extent of the existing surrounding development compared to the proposed development sought by the landowner. *Id.* at 634, 121 S.Ct. 2448 (O'Connor, J., concurring). Justice O'Connor emphasized that courts must evaluate all of the circumstances that are probative of what fairness requires in a given case. *Id.*

Similarly, in *Dorman, supra,* the Michigan court of appeals decided that the township's rezoning did not interfere with the landowner's investment-backed expectations, in part because "[a] simple visual inspection of the area would have placed [landowner] on notice that his proposed development was inconsistent with the character of the neighborhood." *Dorman,* 714 N.W.2d at 358.

---

7. *See generally* Washburn, Robert, *"Reasonable Investment–Backed Expectations" as a Factor in Defining Property Interest,* 49 WASH. U.J. URB. & CONTEMP. L. 63 (1996); Radford, R.S. and Breemer, J. David, *The (Less?) Murky Doctrine of Investment–Backed Expectations after Palazzolo, and the Lower Courts' Disturbing Insistence on Wallowing in the Pre–Palazzolo Muck,* 34 S.W. U.L. REV. 351 (2005).

In the case before us, Landowner alleges that her investment-backed expectations are the expenditures that she made preparing her property for development in reliance on the existing M–1 Industrial zoning. However, as Justice O'Connor explained in *Palazzolo*, existing zoning regulations are not the only aspect to consider in determining reasonable investment-backed expectations within the context of the takings clause. *Palazzolo*, 533 U.S. at 634, 121 S.Ct. 2448 (O'Connor, J., concurring). We must evaluate the nature and extent of the development surrounding Landowner's property as well, because this should also shape Landowner's expectations regarding how she will be permitted to use her property. *See id.; see also Dorman*, 714 N.W.2d at 358.

The record before us reveals that properties zoned R–3 and R–4 Residential abutted Landowner's property on all three sides, as well as directly across the street. Landowner's narrow strip of property was imbedded between two residential subdivisions. Over thirty homes backed onto the property. This indicates that, despite the existing M–1 Industrial zoning, an office building would have been inconsistent with the development in the neighborhood at that time. *See Dorman*, 714 N.W.2d at 358.

■ Moreover, when evaluating reasonableness, we must also take into account the government's right to modify zoning ordinances to benefit the public. It is not reasonable for a landowner to presume that the zoning on her property will remain indefinitely. The government is permitted to change zoning to prohibit particular contemplated uses of property if it reasonably concludes that the " 'health, safety, morals, or general welfare' " would be promoted by doing so. *See Schnuck Markets, Inc. v. City of Bridgeton*, 895 S.W.2d 163, 168 (Mo.App. E.D.1995) (quoting *Penn Central*, 438 U.S. at 125, 98 S.Ct. 2646). This is particularly true here, where the industrial zoning of Landowner's property was inconsistent with the residential nature of the surrounding neighborhood. The County had the right to promote the general welfare by rezoning Landowner's property to make it compatible with the uses adjacent to it.

Therefore, due to the residential nature of the neighborhood and the County's right to prohibit contemplated uses of property to promote the general welfare, we find that Landowner's expenditures on the property were not "reasonable investment-backed expectations" within the context of the takings clause. The second factor in the *Penn Central* balancing test is more favorable to the County.

■ The third factor in the *Penn Central* balancing test is the character of the government's action. A government regulation is more apt to constitute a compensable taking when the interference with property can be characterized as a physical invasion by the government, as opposed to a regulation that merely affects property interests by adjusting the benefits and burdens of economic life to promote the public good. *See Lingle*, 544 U.S. at 539–40, 125 S.Ct. 2074; *Penn Central*, 438 U.S. at 124, 98 S.Ct. 2646.

Clearly, this third factor is favorable to the County. The County did not physically invade Landowner's property. It merely rezoned the property to make it compatible with the residential subdivisions surrounding it.

Because we find all three factors of the *Penn Central* balancing test in favor of the County, we reverse the trial court's judgment finding the County's rezoning of Landowner's property constituted a compensable taking under Article I, Section 26 of the Missouri Constitution, as well as the

trial court's judgment ordering the County to pay attorney's fees and damages to Landowner.

### Due Process

 On cross-appeal, Landowner argues the trial court erred in failing to find the County's actions violated her substantive due process rights, and in failing to award her damages under 42 U.S.C. Section 1983. The Missouri Supreme Court recently announced that:

> There are two elements that must be established to prevail on a claim under [S]ection 1983. First, a claimant must establish a protected property interest to which the Fourteenth Amendment's due process protection applies. A claimant must also establish that the governmental action was truly irrational.

*Furlong Companies, Inc. v. City of Kansas City,* 189 S.W.3d 157, 170 (Mo. banc 2006) (internal quotations and citations omitted). To be truly irrational, the County's action had to be "something more than the government decision was arbitrary, capricious, or in violation of state law." *Chesterfield Development Corporation v. City of Chesterfield,* 963 F.2d 1102, 1104 (8th Cir.1992). " '[T]he theory of substantive due process is properly reserved for truly egregious and extraordinary cases.' " *Id.* at 1105 (quoting *Myers v. Scott County,* 868 F.2d 1017, 1019 (8th Cir.1989)).

Here, we find the County's rezoning of Landowner's property was not truly irrational. As discussed in detail above, Landowner's property was surrounded by established residential subdivisions. The County rezoned the property after the County Planning Department concluded that R–3 Residential was appropriate for the location. The County's rezoning does not rise to the level of an arbitrary, capricious, or truly egregious act. Accordingly, we affirm the trial court's judgment in

County's favor on Landowner's claim for damages under 42 U.S.C. Section 1983.

REVERSED IN PART; AFFIRMED IN PART.

KATHIANNE KNAUP CRANE, P.J., and LAWRENCE E. MOONEY, J., concur.