DORMAN v TOWNSHIP OF CLINTON

Docket No. 256362. Submitted December 7, 2005, at Detroit. Decided February 7, 2006, at 9:05 a.m. Leave to appeal sought.

Michael Dorman brought an action in the Macomb Circuit Court against Clinton Township, alleging inverse condemnation of his real property by regulatory taking and violations of substantive due process after the property was rezoned to its original zoning as "Residential Multiple" from the "Light Industrial" zoning that was in place when the plaintiff purchased the property. The court, Mary A. Chrzanowski, J., granted summary disposition for the township, dismissing the action. The plaintiff appealed.

The Court of Appeals *held*:

1. The circuit court did not err in dismissing the inverse condemnation action on the basis that the plaintiff failed to create a factual dispute that the township zoning ordinance amounted to a de facto taking of his property. A de facto taking of property occurs when a condemning authority, under the power of eminent domain, fails to follow the procedures outlined in the Uniform Condemnation Procedures Act, MCL 213.51 *et seq*. A rezoning that merely diminishes the value of property does not constitute a de facto taking.

2. The circuit court did not err in dismissing the inverse condemnation action on the basis that the plaintiff failed to create a factual dispute that the township zoning ordinance amounted to a regulatory taking of his property. Mere diminution of value of land by rezoning does not amount to a governmental taking. A regulatory taking occurs when the government effectively condemns private property for public use by overburdening the property with regulations, giving rise to the owner's entitlement to just compensation. This occurs when the owner is deprived of all economically beneficial or productive use of the land or when the government physically and permanently invades any portion of the property. The reduction in value of land because of rezoning does not amount to a regulatory taking. A plaintiff who asserts denial of economically viable use of the property must show that the property is either unsuitable for use as zoned or unmarketable as zoned. No such showing was made in this case.

3. The plaintiff did not have a constitutionally protected right to develop his property under the zoning in effect when he purchased the property. To claim a vested interest in a zoning classification, the property owner must hold a valid building permit and have completed substantial construction. The Court has specifically declined to find a taking where a local government rezoned property while the owner's application for a building permit was pending, except where work of a substantial character has already been completed. The plaintiff had no building permit and had merely removed the interior walls of one building without starting either of the other two buildings in his project.

4. The circuit court did not err in dismissing the plaintiff's substantive due process claims based on the township's alleged questionable and arbitrary methods of deciding the rezoning. To support a substantive due process claim, the plaintiff would have to demonstrate that there is no reasonable governmental interest being advanced by the rezoning or that the ordinance is unreasonable because of the purely arbitrary, capricious, and unfounded exclusion of types of legitimate land use from the area in question. The plaintiff failed to show that the ordinance totally excludes the proposed use in the township or that the ordinance precludes any use on the property to which it is reasonably adapted. Preserving the residential nature of a neighborhood and limiting traffic for the safety of local residents are both legitimate, reasonable governmental interests that may be advanced by zoning regulation, a goal of which is to segregate incompatible uses.

5. The circuit court did not abuse its discretion when it denied the plaintiff's motion to amend his complaint to add a procedural due process claim. Although leave to amend pleadings shall be freely given when justice so requires, it should be denied where amendment would be futile. Because the plaintiff did not have a vested interested in the prior zoning classification, his procedural due process claim would also lack merit.

6. The circuit court did not abuse its discretion when it denied the plaintiff's belated request to include an additional expert witness. In determining whether the barring of a witness is an appropriate discovery sanction, the court should consider whether the violation was willful or accidental; the party's history of refusing to comply with discovery requests or disclosure of witnesses; the prejudice to the party; the actual notice to the opposite party; and the attempt to make a timely cure. In the light of the plaintiff's history of missing discovery deadlines and failing to timely complete discovery requests, the trial court did not abuse its discretion in determining that the exclusion was warranted

under MCR 2.313(B)(2), which allows a court to sanction a party for failing to reveal the identity of an expert witness in a timely fashion.

Affirmed.

1. EMINENT DOMAIN — INVERSE CONDEMNATION — DE FACTO TAKINGS.

A de facto taking of property occurs when a condemning authority, under the power of eminent domain, fails to follow the procedures outlined in the Uniform Condemnation Procedures Act; a rezoning that merely diminishes the value of property does not constitute a de facto taking of property (MCL 213.51 *et seq.*).

2. EMINENT DOMAIN — INVERSE CONDEMNATION — REGULATORY TAKINGS.

A regulatory taking occurs when the government effectively condemns private property for public use by overburdening the property with regulations, giving rise to the owner's constitutional entitlement to just compensation; a regulatory taking occurs when the owner is deprived of all economically beneficial or productive use of the land or when the government physically and permanently invades any portion of the property; mere reduction in value of land because of rezoning does not amount to a regulatory taking of the property; an owner who asserts denial of economically viable use of the property must show that the property is either unsuitable for use as zoned or unmarketable as zoned (US Const, Am V; Const 1963, art 10, § 2).

3. ZONING — REZONING — PREVIOUS CLASSIFICATIONS — VESTED INTERESTS.

To claim a vested interest in a previous zoning classification after property is rezoned, the property owner must have held a valid building permit and have completed substantial construction; in general, there has been no taking where a local government rezoned property while the owner's application for a building permit was pending, except where work of a substantial character has already been completed.

4. ZONING — SUBSTANTIVE DUE PROCESS — REASONABLE GOVERNMENT INTEREST.

To support a substantive due process claim involving a rezoning, the plaintiff would have to demonstrate that there is no reasonable, legitimate governmental interest being advanced by the rezoning or that the ordinance is unreasonable because of the purely arbitrary, capricious, and unfounded exclusion of types of legitimate land use from the area in question; preserving the residential nature of a neighborhood and limiting traffic for the safety of local

residents are both legitimate, reasonable governmental interests that may be advanced by zoning regulation, a goal of which is to segregate incompatible uses.

*Tomkiw Dalton, PLC* (by *Daniel P. Dalton*), for the plaintiff.

*York, Dolan & Tomlinson, P.C.* (by *John A. Dolan*), for the defendant.

Before: CAVANAGH, P.J., and COOPER and DONOFRIO, JJ.

COOPER, J. Plaintiff Michael Dorman appeals as of right from the trial court's order granting defendant Clinton Township's motion for summary disposition pursuant to MCR 2.116(C)(10)[1] in this dispute regarding the rezoning of plaintiff's property. The trial court dismissed plaintiff's inverse condemnation action, in which plaintiff alleged that the township's actions amounted to a regulatory taking and violated his right to substantive due process. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a licensed mortgage lender and broker who frequently speculates in real estate. In April of 2001, he purchased the property at issue in this case for $273,000, after reading a newspaper advertisement for its sale, and viewing the property and speaking to the prior owner only once.[2] The property is located in a residential neighborhood in Clinton Township. It is

---

[1] Defendant also sought, and was granted, summary disposition pursuant to MCR 2.116(C)(7). However, defendant neither stated its grounds for seeking dismissal under that subsection nor argued in favor of that motion below. Accordingly, we will consider defendant's motion solely under MCR 2.116(C)(10).

[2] An entry in the township's tax records described the "terms of sale" as an "arms length" transaction.

undisputed that the only access to the property is through residential roads; the closest main thoroughfare is a half mile away. The property is currently bordered on the south by a single-family residential subdivision, on the north and west by multi-unit residential developments, and on the east by a parcel on which one single-family home has been constructed.[3] According to the township's Master Plan, plaintiff's property was originally zoned "Residential Multiple," allowing the construction of apartment buildings, condominium complexes, or single-family residences. In 1993, the township rezoned the property to "Light Industrial" with a special use permit for a local Elks Club to construct a 7,000 square foot lodge. However, the township never amended its Master Plan to reflect this change. The Elks Club subsequently failed to make payments on its mortgage and the property was foreclosed in 2000.[4]

Plaintiff anticipated beginning a public storage business on the site. According to his preliminary proposal, plaintiff intended to renovate the existing structure into a climate-controlled, mini-storage facility and to construct two additional buildings on the property. He claimed that township officials encouraged his plan to develop the property, and that the planning commission expressed its intent to recommend approval of his plan. Therefore, plaintiff began preparing the interior of the lodge for reconstruction. Plaintiff alleged that the township treasurer, William Sowerby, was opposed to his proposed development and actively pursued its rejec-

---

[3] Plaintiff asserts that a television station housing large satellite dishes also borders the property. However, plaintiff's record citation does not support this fact.

[4] It appears from the record that an agent of the defaulted mortgage lender purchased the property at the foreclosure sale before listing it on the open market. Plaintiff purchased the property from that owner.

tion. Plaintiff contended that Mr. Sowerby questioned the propriety of the zoning classification during a Budget Ways and Means Committee meeting and, thereafter, convinced the township to rezone the property back to "Residential Multiple." Following a public hearing, the planning commission recommended rezoning plaintiff's property. The township board ultimately voted to return the property to its original classification in light of recent residential development in the area and to prevent increased truck traffic on residential streets.[5] Plaintiff's proposed development was, therefore, rejected.[6] Plaintiff admits that he did not review the Master Plan or question the seemingly out-of-place zoning classification before closing on the sale of this property.[7]

Plaintiff filed the instant action for inverse condemnation, challenging the validity of the township's decision to rezone his property. He asserted that the township's rezoning significantly decreased the value of his property. Therefore, he alleged that the rezoning amounted to a taking and that he was entitled to just compensation. He also challenged the legitimacy of the township's stated purpose in rezoning the property and its belated rezoning following the submission of his proposed site plan. Plaintiff contended that the township singled out his property specifically to prevent his proposed development. Following lengthy discovery, the

---

[5] The board also voted to rezone the parcel bordering plaintiff's property to the east from "Light Industrial" to "Residential Multiple" at the same time.

[6] It appears from the record that the township "tabled," rather than officially rejected, plaintiff's proposed site plan. However, the township does not contest that its action amounted to a final decision.

[7] In fact, plaintiff closed the sale only 12 days after first viewing the property and speaking with the owner.

parties filed cross-motions for summary disposition.[8] The trial court subsequently granted summary disposition in the township's favor.

### II. STANDARD OF REVIEW

We review a trial court's determination regarding a motion for summary disposition de novo.[9] A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim.[10] "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in [the] light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists."[11] Summary disposition is appropriate only if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law.[12] We also review issues of constitutional law de novo.[13]

### III. INVERSE CONDEMNATION/REGULATORY TAKING

Plaintiff challenges the trial court's dismissal of his inverse condemnation action seeking just compensation for the taking of his property. Plaintiff contends that the township deliberately and improperly interfered with his proposed development by rezoning the prop-

---

[8] Plaintiff moved for summary disposition pursuant to MCR 2.116(I)(2) ("If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party.").

[9] *MacDonald v PKT, Inc*, 464 Mich 322, 332; 628 NW2d 33 (2001).

[10] *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 397; 605 NW2d 685 (1999).

[11] *Singer v American States Ins*, 245 Mich App 370, 374; 631 NW2d 34 (2001).

[12] *MacDonald, supra* at 332.

[13] *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003).

erty to "Residential Multiple" following the submission of his proposed site plan. By limiting the potential use of this property, plaintiff asserts that the township greatly reduced its value and, therefore, effectively confiscated his property.

The Fifth Amendment of the United States Constitution and Article 10 of the Michigan Constitution both prohibit the taking of private property for public use without just compensation.[14] Through its power of eminent domain, however, the state may follow the procedures outlined in the Uniform Condemnation Procedures Act[15] and condemn, or "take," private property for public use by providing the requisite compensation.[16] A property owner may bring an inverse condemnation action seeking just compensation for a "de facto taking," when the state fails to follow those procedures.[17] "While there is no exact formula to establish a de facto taking, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of the property."[18] When considering whether a de facto taking has occurred, we must consider "the form, intensity, and the deliberateness of the government actions" in the aggregate.[19]

---

[14] *Adams Outdoor Advertising v East Lansing (After Remand)*, 463 Mich 17, 23; 614 NW2d 634 (2000), citing US Const, Am V, and Const 1963, art 10, § 2.

[15] MCL 213.51 *et seq.*

[16] *Merkur Steel Supply, Inc v Detroit*, 261 Mich App 116, 129; 680 NW2d 485 (2004).

[17] *Peterman v Dep't of Natural Resources*, 446 Mich 177, 187-188; 521 NW2d 499 (1994); *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 548; 688 NW2d 550 (2004); *Merkur, supra* at 129.

[18] *Charles Murphy, MD, PC v Detroit*, 201 Mich App 54, 56; 506 NW2d 5 (1993).

[19] *Merkur, supra* at 132.

An inverse condemnation claim may be based upon the government's "regulatory taking" of private property. A regulatory taking occurs when the state effectively condemns, or takes, private property for public use "by overburdening that property with regulations."[20] There are two situations in which a property owner is automatically entitled to just compensation: (1) "where the owner is deprived of '*all* economically beneficial or productive use of [his or her] land,' " or (2) when the government physically and permanently invades any portion of the property.[21] Where the government's actions merely diminish the owner's ability to freely use his or her land, the court must apply the balancing test set forth by the United States Supreme Court in *Penn Central Transportation Co v New York City*.[22] In determining whether such actions amount to a taking under *Penn Central*, the court must consider: "(1) the character of the government action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-backed expectations."[23]

We agree with the trial court that plaintiff failed to create a factual dispute that the township zoning ordi-

---

[20] *K & K Constr, Inc v Dep't of Natural Resources*, 456 Mich 570, 576; 575 NW2d 531 (1998); *Merkur, supra* at 130.

[21] *Adams, supra* at 23 (emphasis added), quoting *Lucas v South Carolina Coastal Council*, 505 US 1003, 1015; 112 S Ct 2886; 120 L Ed 2d 798 (1992). See also *Lingle v Chevron USA Inc*, 544 US 528, ___; 125 S Ct 2074, 2081; 161 L Ed 2d 876 (2005).

[22] *Penn Central Transportation Co v New York City*, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978).

[23] *K & K Constr, supra* at 577. The United States Supreme Court recently clarified in *Chevron* that the determination of whether a regulation fails to "substantially advance legitimate state interests" has no part in the takings analysis. *Chevron, supra* at ___; 125 S Ct 2082-2084. Accordingly, we need not consider plaintiff's challenge to the rezoning of his property on that ground.

nance amounted to either a de facto or a regulatory taking of his property. Plaintiff's argument rested on the alleged reduction in the value of his property due to its rezoning to residential use. However, it is well established that a municipality is not required to zone property for its most profitable use,[24] and that "[m]ere diminution in value does not amount to [a] taking."[25] " 'Disparity in values between residential and commercial uses will always exist' "; yet, a municipality clearly is not required to favor the latter use at the expense of the former.[26] A plaintiff who asserts that he was "denied economically viable use of his land" must show something more—" 'that the property was either unsuitable for use as zoned or unmarketable as zoned.' "[27]

Plaintiff alleged, without providing any supporting evidence, that his proposed storage facility would be worth approximately $700,000. He further asserted that the township, by rezoning his property to residential use, effectively reduced the property's assessed value to $148,000. Yet, plaintiff's own real estate appraisal expert, Gilbert A. Zook, stated that plaintiff could divide the property into eight residential lots priced at $45,000 each and sell the lots for a net profit of $11,200 after deducting costs. A property owner may present evidence that his or her property could be more

[24] *Equitable Bldg Co v Royal Oak*, 67 Mich App 223, 227; 240 NW2d 489 (1976), citing *Scholnick v Bloomfield Twp*, 350 Mich 187; 86 NW2d 324 (1957).

[25] *Bell River Assoc v China Twp*, 223 Mich App 124, 133; 565 NW2d 695 (1997), citing *Bevan v Brandon Twp*, 438 Mich 385, 402-403; 475 NW2d 37 (1991), amended 439 Mich 1202 (1991). See also *Gackler Land Co, Inc v Yankee Springs Twp*, 427 Mich 562, 572; 398 NW2d 393 (1986) ("[P]laintiff cannot establish a confiscation by simply showing a disparity in value between uses.").

[26] *Gackler, supra* at 572-573, quoting *Brae Burn, Inc v Bloomfield Hills*, 350 Mich 425, 433; 86 NW2d 166 (1957).

[27] *Bell River, supra* at 133, quoting *Bevan, supra* at 403.

profitable if put to a different use. However, an owner may not base his or her claim for just compensation on uncertain and speculative expected profits.[28] Nothing in the record suggests that plaintiff's property is unsuitable for residential development. It is located in an established residential area in which single-family residential developments have recently increased. While plaintiff alleges that there is no market for such homes in the area, his own expert witness provided evidence to the contrary. Although plaintiff had high personal expectations for his mini-storage facility, this business could, potentially, have operated at a loss. Absent any supporting evidence, plaintiff's damages are too speculative to support his claim for just compensation.[29]

Furthermore, plaintiff cannot establish that the township's rezoning of his property interfered with legally recognized "distinct, investment-backed expectations" under *Penn Central*. Plaintiff conducted minimal research before expending a large sum of money on this property. He admitted that he closed on the prop-

---

[28] See *Merkur, supra* at 135.

[29] Plaintiff cited *Sheffield Dev Co, Inc v Glenn Hts,* 140 SW3d 660, 677 (Tex, 2004), in support of the proposition that "lost profits are clearly one relevant factor to consider in assessing the value of property and the severity of the economic impact of rezoning on a landowner." We are not bound by the decisions of other state courts. However, we note that the *Sheffield* court clarified this general proposition:

> It must be kept in mind, however, that "[t]he takings clause . . . does not charge the government with guaranteeing the profitability of every piece of land subject to its authority. Purchasing and developing real estate carries with it certain financial risks, and it is not the government's duty to underwrite this risk as an extension of obligations under the takings clause." [*Id.* (citation omitted).]

Plaintiff, an experienced real estate investor, should have been prepared for the financial risks involved in this project.

erty only 12 days after first visiting the property and speaking to the owner. A simple visual inspection of the area would have placed plaintiff on notice that his proposed development was inconsistent with the character of the neighborhood. Moreover, plaintiff did not have a constitutionally protected right to develop his property under the "Light Industrial" zoning classification. To claim a vested interest in a zoning classification, the property owner must "hold[] a valid building permit and [have] completed substantial construction."[30] This Court has specifically declined to find a taking where a municipality rezoned property while the owner's application for a building permit was pending.[31] Plaintiff conceded that the township never granted final approval of his proposed site plans, and only encouraged his preliminary plans to develop the property. Plaintiff had not completed sufficient construction on his property for his interest to vest. In *Gackler Land Co v Yankee Springs Twp*, the Michigan Supreme Court found that a municipality must allow a property owner to continue construction under a prior zoning classification where "work of a 'substantial character' " has already been completed.[32] "In this regard, preliminary operations such as ordering plans, surveying the land, and the removal of old buildings are insufficient . . . ."[33] Plaintiff had made no changes to the land itself and had

---

[30] *Seguin v Sterling Hts*, 968 F2d 584, 590-591 (CA 6, 1992), citing *City of Lansing v Dawley*, 247 Mich 394, 396-397; 225 NW 500 (1929) (finding no vested right to construct the proposed building where the property owner had only ordered the construction plans and conducted a survey of the land), and *Schubiner v West Bloomfield Twp*, 133 Mich App 490, 497; 351 NW2d 214 (1984).

[31] *Schubiner, supra* at 497, citing *Franchise Realty Interstate Corp v Detroit*, 368 Mich 276; 118 NW2d 258 (1962).

[32] *Gackler, supra* at 574 (citation omitted).

[33] *Id.* at 574-575.

yet to begin construction on the two additional build-
ings proposed in his site plan.[34] Plaintiff had merely
removed the interior walls from the lodge in prepara-
tion for reconstruction. Under these circumstances, we
cannot find that plaintiff created a question of fact that
he suffered an economic hardship amounting to a
taking, regulatory or otherwise.

### IV. SUBSTANTIVE DUE PROCESS

Plaintiff also challenges the trial court's dismissal of
his due process claim against the township. Plaintiff
alleged that he was denied his right to substantive due
process by the questionable and arbitrary method by
which the township rezoned his property to "Residen-
tial Multiple." Plaintiff alleged that the "legitimate
state interest" cited by the township in support of the
rezoning was a mere pretext. He asserted that the
decision was based solely on the personal motives of Mr.
Sowerby.

A plaintiff who alleges an unconstitutional taking of
his or her property may also challenge the validity of
the zoning ordinance as a violation of his or her right to
substantive due process. We presume that a challenged
zoning ordinance is valid.[35] However, a plaintiff may
establish that a land use regulation is unconstitutional,
either on its face or "as applied" by showing "(1) that
there is no reasonable governmental interest being
advanced by the present zoning classification or (2) that

---

[34] Plaintiff failed to make any changes to the land even though the
planning department warned him to construct a fence around the
dumpster, to make improvements to the parking lot, and to construct a
public access sidewalk. Plaintiff also failed to remove litter and debris
from the property after he was warned that this condition was an
ordinance violation.

[35] *Frericks v Highland Twp*, 228 Mich App 575, 594; 579 NW2d 441
(1998).

an ordinance is unreasonable because of the purely arbitrary, capricious, and unfounded exclusion of other types of legitimate land use from the area in question."[36]

> A facial challenge alleges that the mere existence and threatened enforcement of the ordinance materially and adversely affects values and curtails opportunities of all property regulated in the market.... An "as applied" challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution.[37]

When raising a facial challenge, the plaintiff must specifically show that the ordinance totally excludes the proposed use in the township[38] and that the ordinance precludes any use on the property "to which it is reasonably adapted."[39] To invalidate the ordinance on either ground, the plaintiff must further show that it serves no " ' "rational relation to the public health, safety, welfare and prosperity of the community . . . ." ' "[40]

Contrary to plaintiff's assertion, the rezoning of his property to "Residential Multiple" did advance a legitimate, reasonable governmental interest. The United States Supreme Court found nearly 80 years ago that preserving the residential nature of a neighborhood and limiting traffic for the safety of local residents are both legitimate interests that may be advanced by a zoning

---

[36] *Id.*

[37] *Paragon Props Co v Novi*, 452 Mich 568, 576; 550 NW2d 772 (1996), citing *Village of Euclid, Ohio v Ambler Realty Co*, 272 US 365, 395; 47 S Ct 114; 71 L Ed 303 (1926).

[38] *Kropf v Sterling Hts*, 391 Mich 139, 155-156; 215 NW2d 179 (1974).

[39] *Id.* at 162-163.

[40] *Frericks, supra* at 607-608, quoting *Christine Bldg Co v Troy*, 367 Mich 508, 516; 116 NW2d 816 (1962) (citation omitted).

regulation.[41] Moreover, a basic goal of land use regulation is to segregate incompatible uses.[42] While plaintiff alleges that the rezoning of his property was prompted by Mr. Sowerby's personal motives, we do not agree that the board's ultimate decision was arbitrary and capricious.

Plaintiff relies heavily on the Sixth Circuit's opinion in *Nasierowski Bros Investment Co v Sterling Hts*[43] to support his contention that his right to due process was violated by Mr. Sowerby's actions. However, the facts in *Nasierowski* are inapposite to this case. We note that the court in that case found a violation of the plaintiff's right to *procedural* due process. Mr. Nasierowski purchased his property following lengthy negotiations with city officials to ensure that his proposed commercial and warehouse development would be approved.[44] The plaintiff invested significant time and money preparing the site plan and seeking a use variance from the city.[45] In the meantime, the planning commission drafted a new master zoning plan, which changed the zoning classification of the plaintiff's property from commercial to business use. The city assured Mr. Nasierowski that his proposed use was also consistent with the new classification.[46] The city conducted public hearings, and the city council expressed its intent to adopt the master plan as recommended. At the conclusion of the public hearings, the council went into an executive session and

---

[41] See *Euclid, supra* at 394-395 (finding the exclusion of apartment buildings from areas zoned for single-family residential use to be constitutional).

[42] See *Paragon, supra* at 573, citing *Euclid, supra* at 386-390.

[43] *Nasierowski Bros Investment Co v Sterling Hts*, 949 F2d 890 (CA 6, 1991).

[44] *Id.* at 891.

[45] *Id.*

[46] *Id.* at 892.

determined to rezone plaintiff's property to office use.[47] This change was instigated by one council member, who lived near the plaintiff's proposed development and desired increased residential development in that area.[48] Due to the unusual procedure by which the master plan was amended, the city's planning department was unaware that any change had been made. As a result, Mr. Nasierowski continued with his plans for several days before his application for a building permit was officially denied.[49]

There is no evidence in the instant case that Mr. Sowerby recommended rezoning plaintiff's property for personal motives.[50] The neighborhood was residential in nature and plaintiff's proposed development was clearly a nonconforming use.[51] Moreover, the township had engaged in "spot zoning" when rezoning the property to "Light Industrial" in the first instance. Removing that classification to bring the property into conformity with the remainder of the neighborhood was not an arbitrary or capricious act. Furthermore, the court in *Nasierowski* found that the property owner had a vested interest in the prior zoning classification, as he had undertaken significant action in reliance on the prior master plan.[52] As we have already noted, the plaintiff in this case did not have a vested interest in the prior classification. Unlike Mr. Nasierowski, who thor-

---

[47] *Id.*

[48] *Id.* at 891-892.

[49] *Id.* at 893.

[50] Compare *id.* at 896 (in which the councilman "offered no policy reasons" in support of his personal objection).

[51] Although plaintiff has challenged the constitutionality of the ordinance on the basis of substantive due process, we note that plaintiff was properly notified of board and planning commission meetings and was represented by council through the entire process.

[52] *Id.* at 897.

oughly researched the feasibility of his development and conditioned his purchase of the property on the approval of his site plan, Mr. Dorman rushed into this sale without determining whether his proposal might be rejected. Accordingly, the trial court also properly dismissed plaintiff's substantive due process claim.

### V. MOTION TO AMEND COMPLAINT/ADD AN EXPERT WITNESS

Sixteen months after filing his complaint, and following lengthy and acrimonious discovery, plaintiff hired new counsel and moved to amend his complaint to add a procedural due process claim. Shortly thereafter, plaintiff also moved to include an additional expert witness to testify regarding the calculation of his damages. Plaintiff challenges the trial court's subsequent denial of both motions.

We review a trial court's denial of a plaintiff's motion to amend his or her complaint for an abuse of discretion.[53] Leave to amend pleadings "shall be freely given when justice so requires."[54] However, leave to amend should be denied "where amendment would be futile."[55] In support of his proposed amendment, plaintiff merely realleged that he was denied due process of law by the procedural irregularities in the rezoning of his property. As we have already determined that plaintiff did not have a vested interest in the prior zoning classification, plaintiff's procedural due process claim would also lack merit. Accordingly, the trial court properly denied his motion to amend.

The trial court also properly denied plaintiff's belated request to include an additional expert witness.

---

[53] *Jenks v Brown*, 219 Mich App 415, 420; 557 NW2d 114 (1996).

[54] MCR 2.118(A)(2).

[55] *Jenks, supra* at 420.

We review a trial court's denial of a motion to add a witness, as a sanction for discovery violations, for an abuse of discretion.[56] The trial court initially ordered the parties to submit their witness lists by November 15, 2002. Although the court extended this deadline by more than four months, plaintiff still submitted his list five days late. Plaintiff subsequently amended his witness list in the summer of 2003, without the permission of the court, to include his real estate appraiser, Mr. Zook. In fact, the township was unable to depose Mr. Zook for several months, as he had yet to complete his report. Plaintiff did not move to add an economist as an expert witness until January 20, 2004, only two months before the twice-rescheduled trial was set to begin.

Pursuant to MCR 2.302(E)(1)(a)(ii), a party has "a duty seasonably to supplement" his or her responses to discovery requests to include the identity of additional expert witnesses. The court may, in its discretion, sanction a party under MCR 2.313(B)(2) for failing to reveal the identity of an expert witness in a timely fashion.[57] As a sanction under that subrule, the court may prohibit the party from "introducing designated matters into evidence . . . ."[58] In determining whether the barring of a witness is an appropriate sanction, the court should consider "whether the violation was wilful or accidental; the party's history of refusing to comply with discovery requests or disclosure of witnesses; the prejudice to the party; the actual notice to the opposite party of the witness; and the attempt to make a timely

---

[56] *Beach v State Farm Mut Automobile Ins Co*, 216 Mich App 612, 618; 550 NW2d 580 (1996); *Colovos v Dep't of Transportation*, 205 Mich App 524, 528; 517 NW2d 803 (1994).

[57] MCR 2.302(E)(2).

[58] MCR 2.313(B)(2)(b).

cure."[59] In light of plaintiff's history of missing discovery deadlines and failing to timely complete discovery requests, it is unlikely that the township could have deposed this witness prior to trial. We recognize that this witness potentially could have provided further evidence allowing the trier of fact to calculate plaintiff's actual damages with more certainty. However, plaintiff never stated with particularity what evidence this witness would provide. Accordingly, we cannot find that the trial court abused its discretion in determining that exclusion was warranted.[60]

Affirmed.

---

[59] *Colovos, supra* at 528.

[60] As plaintiff has failed to convince this Court that he is entitled to relief on appeal, we need not consider whether it would have been appropriate to reassign this case to a different judge had we remanded to the trial court.