*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THREE RIVERS METAL RECYCLERS, LLC,
DAVE RITZER d/b/a STEVE'S AUTO PARTS, and
KEVIN ROBERTS d/b/a BROKERS SERVICE,

UNPUBLISHED
June 11, 2020

Plaintiffs-Appellants,

v

No. 347583
St. Joseph Circuit Court
LC No. 16-001037-CH

TOWNSHIP OF FABIUS,

Defendant-Appellee.

Before:  K. F. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Plaintiffs, Three Rivers Metal Recyclers, LLC (TRMR), Dave Ritzer d/b/a Steve's Auto Parts, and Kevin Roberts d/b/a Brokers Service, appeal as of right the trial court order denying in part and granting in part defendant Fabius Township's motion for summary disposition in this action alleging an unconstitutional taking of property.[1]  Finding no errors warranting reversal, we affirm.  This appeal is decided without oral argument.  MCR 7.214(E)(1)(b).

## I. BASIC FACTS AND PROCEDURAL HISTORY

In December 2008, plaintiff purchased 14.3 acres zoned as I-1 Light Industrial in defendant township.  In October 2011, plaintiff applied for a special exception use permit (SEUP) for 5.1 acres of the property and proposed to operate a metal and aggregate recycling facility, specifically, an auto junkyard with a car crusher.  The township planning commission held multiple public hearings.  Ultimately, the planning commission retained McKenna Associates to prepare a report

---

[1] Although three plaintiffs are designated as appellants, the trial court dismissed the individual plaintiffs as well as the substantive and procedural due process claims in a written order filed on September 17, 2018.  The trial court decided the dispositive motion at two separate hearings held months apart.  Plaintiffs did not appeal the September 17, 2018 order, and therefore, this appeal is limited to the claim of taking, and the singular "plaintiff" refers to TRMR only.

addressing how plaintiff's site plan comported with ordinance requirements and sound planning principles and to make recommendations. Amy Neary of McKenna Associates articulated 21 recommendations that included landscaping, proposed buildings and their location on the property, paving, and application of standards and guidelines from industry recycling groups. Ultimately, the planning commission approved the SEUP subject to the 21 conditions recommended by Neary.

Plaintiff appealed the planning commission's decision to impose conditions on the SEUP to the circuit court. Although it did not oppose all of the recommendations, plaintiff claimed that the conditions were not derived from any standards established in the zoning ordinance. The circuit court declined to rule on whether the conditions imposed complied with the statutory requirements, but it instead held that the recommendations were not properly adopted in the planning commission's factual findings. Accordingly, the circuit court granted plaintiff's request for a SEUP free from the adopted conditions.

Defendant appealed the circuit court's decision to this Court. In lieu of granting leave to appeal, this Court concluded that the circuit court applied an incorrect legal principle, vacated the lower court's decision, and remanded "to consider and resolve plaintiff's objections to the conditions imposed on the special exemption use permit in light of the requirements in MCL 125.3504."[2] On February 15, 2015, the circuit court issued an order affirming in part and reversing in part the decision of defendant's planning commission and approving a SEUP with conditions. The circuit court's order delineated the recommended conditions by McKenna Associates and either accepted or rejected the conditions.

On November 18, 2016, plaintiff filed the lawsuit underlying this appeal, alleging "inverse condemnation for a regulatory taking of Plaintiffs' property," and deprivation of substantive due process and the "right to fair and just treatment." To summarize, plaintiff alleged that the circumstances pertaining to the underlying zoning condition litigation resulted in a taking of property. Specifically, it claimed that defendant's approval of the SEUP by the planning commission with the 21 conditions was improper. Although defendant appealed the decision to this Court, after remand to the circuit court, plaintiff concluded that it prevailed because, ultimately, the conditions imposed by defendant's planning commission were wholly or partially reversed by the courts. Accordingly, plaintiff filed a lengthy complaint delineating the conditions adopted by the planning commission and alleging that "[s]aid condition was and is unconstitutional as effecting a taking without just compensation[.]" Reduced to its essence, plaintiff alleged that each of the conditions recommended by McKenna Associates constituted a regulatory taking because the terms, such as requiring paving of the premises and limiting the hours of operation, were an interference with the business and not legitimate regulation.

On July 27, 2018, defendant moved for summary disposition of the complaint pursuant to MCR 2.116(C)(5), (7), (8) and (10).[3] Pertinent to this appeal, defendant submitted that the taking

---

[2] *Three Rivers Recyclers, LLC v Twp of Fabius*, unpublished order of the Court of Appeals, entered June 10, 2014 (Docket No. 319932).

[3] Defendant's motion for summary disposition also sought dismissal of the claims by the individual plaintiffs and the procedural and substantive due process claims. It further asserted that all claims

of property without just compensation/inverse condemnation claim should be dismissed pursuant to MCR 2.116(C)(8) and (10). Although the state and federal governments provide that a taking of property for public use should not occur without just compensation, a plaintiff asserting inverse condemnation must demonstrate that it was deprived of all economically viable use of its land. Defendant asserted that the law pertaining to temporary takings was the same as permanent takings, and a landowner must be denied of all use of the property. Specifically, defendant alleged that plaintiff failed to show that it was deprived of the use of the property when it could have developed the property in accordance with the I-1 light industrial zoning ordinance. Moreover, a taking claim should not be permitted to penalize defendant for seeking an adjudication of the zoning ordinance on appeal particularly where there was no extraordinary delay in obtaining the ruling.

On August 20, 2018, plaintiff opposed the dispositive motion by claiming that a taking occurred because defendant's regulation went too far. Plaintiff asserted that defendant's imposed conditions on the land use permit "in exchange for exactions demanded by the governmental unit from the property owner," was improper and known as the doctrine of "unconstitutional conditions." Defendant could not exert its control over benefits, such as permits, to coerce a person into giving up a constitutional right. Further, contrary to defendant's assertion, plaintiff pleaded a claim for inverse condemnation because the complaint alleged that each imposed condition constituted an unconstitutional taking without just compensation, delineated the conditions' negative effects, and showed the property's decline in value as a result of the government's abuse of power. Plaintiff claimed that a temporary taking was not alleged.[4] Lastly, plaintiff alleged that township supervisor John Kroggel admitted that there was no economic consideration of the conditions placed on the property or any economic benefit to defendant as a result. Thus, defendant failed to advance a legitimate state interest for the conditions. Plaintiff requested that summary disposition be denied.

On August 31, 2018, the trial court heard oral argument regarding the dispositive motion. At this hearing, it dismissed the individual plaintiffs as well as the due process claims. The trial court heard the remaining arguments and took the matter under advisement. On January 3, 2019, the trial court held a hearing on the record to rule on the remaining summary disposition challenges. The trial court examined the history of takings law and the tests and factors that evolved over time and then concluded:

> So then the question becomes, at what point can a property owner rely on a land use regulation for the right to use property in a particular manner. The material indicates that, in Michigan, the answer to this question is that complete reliance

---

were subject to a statute of limitation period of three-years. The trial court dismissed the individual and due process claims, but held that a three-year statute of limitation period did not apply. These rulings are not contested in this appeal.

[4] In the lower court and in the brief on appeal, plaintiff contends that it raised a claim of permanent taking, not a temporary taking. However, paragraph 78 of the complaint states, "The period of the unconstitutional taking began March 20, 2012, and ended, at the earliest, December 26, 2013, or alternatively, at the latest February 18, 2015."

may occur only where a property owner has secured issuance of a building permit and commenced on-site construction. And that refers to Justice Martin's [sic] concurring statement filed in connection with the denial of the application for leave to appeal in *Dorman v Township of Clinton*, 477 Mich 955.

The material goes on to refer to Justice Rehnquist's opinion in *Penn Central* where he provides the explanation to the concept relation [sic] to takings jurisprudence.

It says, typical zoning restrictions made as true so limit the prospective uses of a piece of property as to diminish the value of the property in the abstract because it may not be used for the forbidden purpose. But any such abstract decrease in value will more than likely be at least partially offset by an increase in value which flows from similar restrictions as to use on neighboring properties. All property owners in a designated area are placed under the same restrictions, not only for the benefit of the municipality as a whole, but, also, for the common benefit of one another. In other words, in the words of Mr. Justice Holmes speaking for the court in *Mahon*, there is an average reciprocity of advantage.

Even where the government prohibits a noninjurious use, the court has ruled that the taking does not take place if the prohibition applies over a broad cross-section of land and, thereby, secures an average reciprocity of advantage.

It is for this reason that zoning does not constitute a taking. While zoning at times reduced individual property values, the burden is shared relatively evenly and is reasonable to conclude that, on the whole, an individual who is harmed by one aspect of the zoning will be benefitted by another.

All right. So those are the basic confusing rules that I've tried to go through in this case. What this case involves is a landowner-a corporation-that bought a parcel, owned it for three years before seeking a special use exception permit to install a recycling plant, which would have been outside the allowed uses under the zoning but one of the specified special uses could be done.

They bought it knowing that it was zoned with that requirement. They bought it knowing that the township could put various conditions on it. Their claim is that the conditions put on it by the township, which were objected to, appealed, and then later overturned, would be the basis, then, for the takings; and that the additional cost necessitated by those during the period of time in which this did not take place . . . (inaudible)

Long story short, I'm granting defendant's motion for summary disposition as I find that this case does not meet the factual basis for an inverse condemnation as there was no taking.

The property was restricted. The township acted in full faith with the use of an engineering company to establish rules for the benefit of the entire township;

That zoning is a permitted use by the township. It's by statute.

The homeowner still had the use of the land for any other purpose. They did not have loss of the land. There was no physical intrusion on the land.

Their complaint that each of those restrictions would have cost more money should have been expected when they bought the property with the knowledge that it had to have a special use exception permit, as they sought it, and that there would be costs related to those.

The fact that some were later overturned or found needless or overburdened does not make this a taking by the township.

For those reasons and for the reasons stated in the briefs and the motion, I grant the motion for summary disposition pursuant to (C)(8) and (C)(10).

And, finally, there's been a failure to state a cause of action as the facts in this case do not meet the requirements of an inverse condemnation.

This ruling is the subject of this appeal.

## II. SUMMARY DISPOSITION STANDARD

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). A motion pursuant to MCR 2.116(C)(8) tests whether the opposing party had failed to state a claim upon which relief can be granted. *Bedford v Witte*, 318 Mich App 60, 64; 896 NW2d 69 (2016). When evaluating a (C)(8) motion, this Court accepts all well-pleaded allegations as true and construes them in the light most favorable to the nonmoving party. *Id*. Summary disposition is appropriate pursuant to (C)(8) only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Id*.

Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68; 919 NW2d 439 (2018).

In *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012), this Court delineated the burden of proof on the respective parties to show a genuine issue of material fact:

> A trial court's ruling on a motion for summary disposition presents a question of law subject to review de novo. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 317; 783 NW2d 695 (2010). Summary disposition pursuant to MCR 2.116(C)(10) is proper when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 461; 646 NW2d 455 (2002). The moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The burden then shifts to the nonmoving party to demonstrate that a genuine issue of disputed fact exists for trial. *Id*. The nonmoving party may not rely on mere allegations or denials in the pleadings. *Id*. Affidavits, depositions, and documentary evidence offered in support of, and in opposition to, the motion are considered only to the extent that the content or substance would be admissible as evidence. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999).

## III. ANALYSIS

Plaintiff failed to meet its burden of establishing a regulatory taking arising from defendant's actions pertaining to zoning. Accordingly, the circuit court properly granted summary disposition in defendant's favor.

## A. OVERVIEW OF ZONING LAW

Zoning ordinances are constitutionally permitted as a valid exercise of the police power. *Austin v Older*, 283 Mich 667, 674; 278 NW 727 (1938). "[Z]oning ordinances, when related to the public health, morals, safety, or general welfare, are a valid exercise of the police power, provided that such ordinances satisfy the legal test of reasonableness." *Detroit Edison Co v Wixom*, 382 Mich 673, 686; 172 NW2d 382 (1969). "[T]he reasonableness of a zoning ordinance and its consequent validity or invalidity must be determined on its own facts and surrounding circumstances." *Id*. at 687. Zoning is designed to protect the status quo as well as control the future development in the best interests of the community. *Austin*, 283 Mich at 675. "Zoning in its best sense looks, not only backward to protect districts already established, but forward to aid in the development of new districts according to a comprehensive plan having as its basis the welfare of the city as a whole." *Id*. (citation omitted). "The ultimate purpose of zoning ordinances is to confine certain classes of buildings and uses to certain localities." *Id*. (citation omitted). When the continued use of property does not conform to the zoning, the conditions should be phased out to expedite conformance with the zoning. *Id*.

All property is held subject to the right of the government to regulate its use in the exercise of the police power so that it shall not be injurious to the rights of the community or so that it may promote its health, morals, safety and welfare. * * * Regulations may result to some extent practically in the taking of property, or the restriction of its use and yet not be deemed confiscatory or unreasonable. * * * Courts will not hold laws, ordinances, or regulations adopted under sanction of law to be unconstitutional unless they are clearly unreasonable, destructive, or confiscatory. [*Austin*, 283 Mich at 677 (citations omitted).]

MCL 125.3201 codifies that local governments may enact zoning ordinances and regulate land development to promote public health, safety, and welfare:

(1) A local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land, to ensure that use of the land is situated in appropriate locations and relationships, to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities, to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements, and to promote public health, safety, and welfare.

(2) Except as otherwise provided under this act, the regulations shall be uniform for each class of land or buildings, dwellings, and structures within a district.

(3) A local unit of government may provide under the zoning ordinance for the regulation of land development and the establishment of districts which apply only to land areas and activities involved in a special program to achieve specific land management objectives and avert or solve specific land use problems, including the regulation of land development and the establishment of districts in areas subject to damage from flooding or beach erosion.

(4) A local unit of government may adopt land development regulations under the zoning ordinance designating or limiting the location, height, bulk, number of stories, uses, and size of dwellings, buildings, and structures that may be erected or altered, including tents and recreational vehicles.

A zoning ordinance is presumed valid. *Kirk v Tyrone*, 389 Mich 429, 439; 247 NW2d 848 (1976). The party challenging the ordinance has the burden of proving that the ordinance is an arbitrary and unreasonable restriction on the owner's use of the property. *Id*. To succeed on a challenge to the zoning ordinance, an aggrieved property owner must demonstrate that if the zoning ordinance is enforced the consequent restrictions on the property preclude its uses for any purposes to which it is reasonably adapted. *Id*.

Despite the designated zoning in a location, the legislative body may provide for special uses in a zoning district. MCL 125.3502. "Special exception uses are uses of land which are specifically permitted in a given district by the zoning ordinance, but only under certain circumstances." *Reilly v Marion*, 113 Mich App 584, 587; 317 NW2d 693 (1982). The grant of a special exception does not involve making an exception to the ordinance, rather, it permits certain uses which the ordinance authorizes under specific conditions. *Room & Bd Homes & Family Care Homes v Gribbs*, 67 Mich App 381, 384; 241 NW2d 216 (1876). The legislative body may only impose conditions related to the use of the land. *Id*. at 385. MCL 125.3504 codifies the reasons for special land use, the approval process, and the reasonable conditions that may be imposed:

(1) If the zoning ordinance authorizes the consideration and approval of special land uses or planned unit developments under section 502 or 503 or

otherwise provides for discretionary decisions, the regulations and standards upon which those decisions are made shall be specified in the zoning ordinance.

(2) The standards shall be consistent with and promote the intent and purpose of the zoning ordinance and shall insure that the land use or activity authorized shall be compatible with adjacent uses of land, the natural environment, and the capacities of public services and facilities affected by the land use. The standards shall also insure that the land use or activity is consistent with the public health, safety, and welfare of the local unit of government.

(3) A request for approval of a land use or activity shall be approved if the request is in compliance with the standards stated in the zoning ordinance, the conditions imposed under the zoning ordinance, other applicable ordinances, and state and federal statutes.

(4) Reasonable conditions may be required with the approval of a special land use, planned unit development, or other land uses or activities permitted by discretionary decision. The conditions may include conditions necessary to insure that public services and facilities affected by a proposed land use or activity will be capable of accommodating increased service and facility loads caused by the land use or activity, to protect the natural environment and conserve natural resources and energy, to insure compatibility with adjacent uses of land, and to promote the use of land in a socially and economically desirable manner. Conditions imposed shall meet all of the following requirements:

(a) Be designed to protect natural resources, the health, safety, and welfare, as well as the social and economic well-being, of those who will use the land use or activity under consideration, residents and landowners immediately adjacent to the proposed land use or activity, and the community as a whole.

(b) Be related to the valid exercise of the police power and purposes which are affected by the proposed use or activity.

(c) Be necessary to meet the intent and purpose of the zoning requirements, be related to the standards established in the zoning ordinance for the land use or activity under consideration, and be necessary to insure compliance with those standards.

(5) The conditions imposed with respect to the approval of a land use or activity shall be recorded in the record of the approval action and remain unchanged except upon the mutual consent of the approving authority and the landowner. The approving authority shall maintain a record of conditions which are changed.

A zoning law may not deprive landowners of vested interests without just compensation. US Const Am V, Am XIV, § 1; Mich Const, art 1 § 17. A zoning ordinance that renders property nearly worthless is generally unreasonable and confiscatory. *Detroit Edison Co*, 382 Mich at 691. "[I]t is well established that a municipality is not required to zone property for its most profitable use, and that 'mere diminution in value does not amount to [a] taking.' " *Dorman v Twp of Clinton*,

269 Mich App 638, 646-647; 714 NW2d 350 (2006). A disparity in value may exist between residential and commercial use, but a municipality is not required to support the latter use at the expense of the former. *Id*. A plaintiff who asserts the denial of economically viable use of his land must demonstrate more than the property was unsuitable for use as zoned or unmarketable as zoned. *Id*.

Plaintiff raised a claim of regulatory taking of property through inverse condemnation. Regulatory taking and inverse condemnation claims are frequently treated interchangeably, but this treatment is not technically correct. Eminent domain is an inherent right of the state to condemn private property for public use, and when exercising eminent domain power, the state or its lawful delegate must pay the landowner just compensation. *Merkur Steel Supply, Inc v City of Detroit*, 261 Mich App 116, 129; 680 NW2d 485 (2004). An inverse condemnation suit is brought by a private property owner whose property was not formally taken for public use by the state, but allegedly was damaged by a public improvement undertaking or other public activity. *Id*. Stated otherwise, "[i]nverse condemnation is 'a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.' " *Id*. (citation omitted). The *Merkur Steel* Court went on to explain the difference between condemnation, inverse condemnation, and a regulatory taking:

> When the government takes property by formal condemnation, it must follow the procedures set out in the Uniform Condemnation Procedures Act (UCPA), MCL 213.51 *et seq.*. However, no exact formula exists concerning a de facto taking; instead, the form, intensity, and the deliberateness of the governmental actions toward the injured party's property must be examined. The plaintiff has the burden of proving causation in an inverse condemnation action. A plaintiff may satisfy this burden by proving that the government's actions were a substantial cause of the decline of its property. The plaintiff must also establish that the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property. Not all government actions may amount to a taking for public use. The mere threat of condemnation and its attendant publicity, without more, is insufficient. Before a court may conclude that a taking occurred, it must examine the totality of the acts alleged to determine whether the governmental entity abused its exercise of eminent domain to plaintiff's detriment.
>
> In contrast, a regulatory taking is one in which the government effectively "takes" a person's property by overburdening it with regulations. Land use regulations effectuate a taking in two general situations: (1) where the regulation does not substantially advance a legitimate state interest, or (2) where the regulation denies an owner economically viable use of his land. The second type of taking is further subdivided into two situations: (a) a "categorical" taking, where the owner is deprived of "all economically beneficial or productive use of land," or (b) a taking recognized on the basis of the application of the traditional "balancing test" established in *Penn Central Transportation Co v New York City*, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978). For a categorical taking, a reviewing court need not apply a case-specific analysis; instead, the owner should automatically recover for the taking of its property. The person may recover for a physical invasion of

his property by the government, or where a regulation forces an owner to " 'sacrifice *all* economically beneficial uses [of his land] in the name of the common good.' " In regulatory takings other than categorical takings, the court must apply a "balancing test." With regard to this balancing test, a reviewing court must engage in an "ad hoc, factual inquiry," centering on three factors: (1) the character of the government's action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-backed expectations. [*Id*. at 129-131; internal citations omitted].

In *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 90; 445 NW2d 61 (1989), our Supreme Court explained regulatory taking and that it may be temporary:

> [T]he State of Michigan recognizes a cause of action for a de facto taking. Const 1963, art 10, § 2; *Hart v Detroit*, 416 Mich 488; 331 NW2d 438 (1982); *In re Urban Renewal, Elmwood Park Project*, 376 Mich 311; 136 NW2d 896 (1965); *Foster v Detroit*, 405 F2d 138 (CA 6, 1968); *In re Acquisition of Virginia Park*, 121 Mich App 153; 328 NW2d 602 (1982); *Detroit Bd of Ed v Clarke*, 89 Mich App 504; 280 NW2d 574 (1979). An inverse or reverse condemnation suit is one instituted by a landowner whose property has been taken for public use "without the commencement of condemnation proceedings." *Hart, supra*, p 494. Under Michigan law, a "taking" for purposes of inverse condemnation means that governmental action has permanently deprived the property owner of any possession or use of the property. *Id*., pp 501-502. When such a taking has occurred, the Michigan Constitution entitles the property owner to just compensation for the value of the property taken. *Id*., p 494.

> Further, Michigan law also recognizes a cause of action for inverse condemnation in cases, like this one, without a physical taking of property, where it is alleged that the effect of a governmental regulation is "to prevent the use of much of plaintiff's property . . . for any profitable purpose." *Grand Trunk W R Co v Detroit*, 326 Mich 387, 392-393; 40 NW2d 195 (1949). For example, in *Spanich v Livonia*, 355 Mich 252, 259-265; 94 NW2d 62 (1959), this Court acknowledged that the application of a zoning ordinance to a particular property can constitute an unconstitutional taking.

> [It is well established] that regulation that goes too far will be recognized as a taking. Where government action works a taking, that necessarily implies the constitutional obligation to pay just compensation. That the regulation was an interim one or could be invalidated did not preclude an award for damages. The Court held that " 'temporary' takings . . . are not different in kind from permanent takings, for which the Constitution clearly requires compensation." *Where government activities effect a taking, the mere invalidation of the offending ordinance does not relieve the government of its duty to provide compensation for the period during which the taking was effective*. The Court did not distinguish between takings accomplished by the use of police power or by eminent domain. The key consideration was whether there had been a taking. [Citations omitted and emphasis in original.]

B. ANALYSIS OF PLAINTIFF'S ARGUMENTS

1. Inverse Condemnation - Taking

In *Blue Harvest, Inc v DOT*, 288 Mich App 267, 277-278; 792 NW2d 798 (2010), this Court delineated the proofs for inverse condemnation:

> "An inverse or reverse condemnation suit is one instituted by a landowner whose property has been taken for public use without the commencement of condemnation proceedings." *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 88-89; 445 NW2d 61 (1989) (citation and quotation marks omitted). "While there is no exact formula to establish a de facto taking, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of the property." *Dorman v Clinton Twp*, 269 Mich App 638, 645; 714 NW2d 350 (2006) (citation and quotation marks omitted). Generally, a plaintiff alleging a de facto taking or inverse condemnation must establish (1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property. *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 548; 688 NW2d 550 (2004). "Further, a plaintiff alleging inverse condemnation must prove a casual connection between the government's action and the alleged damages." *Id*.

We conclude that plaintiff failed to meet its burden of demonstrating that an inverse condemnation occurred through a regulatory taking. Specifically, plaintiff was required to show that defendant's actions were a substantial cause of the property's decline in value. However, plaintiff did not proffer an expert to testify regarding the amount paid for the property and any diminution in value as a result of the conditions placed on the property to obtain the SEUP. A motion for summary disposition must be made and supported by the moving party. *McCoig Materials, LLC*, 295 Mich App at 693. In the present case, defendant presented meeting minutes, an opinion by McKenna Associates, and its zoning ordinance. The property at issue had previously been used for manufacturing, and a cleanup of the property occurred. Although plaintiffs initially labelled their use of the land as a "recycling center," they chose to seek a SEUP because their planned use of the facility would involve a scrap/junk yard. This would necessarily bring to the property vehicles for demolition that could result in the discharge of oil and other chemical fluids at the location. Further, defendant's planning commission expressed concern regarding the hours of operation and the aesthetics of the location. Defendant was required to enforce the zoning and special land uses of the property in accordance with the public health, safety, and welfare in mind. MCL 125.3201(1); MCL 125.3504(2). Additionally, defendant needed to consider any neighboring community and the impact of the operation of a junkyard, without restrictions, on the surrounding community. Simply put, plaintiff failed to present expert testimony or other documentary evidence to show that defendant's conditions, as recommended by an independent consulting firm McKenna Associates, caused a substantial decline in the value of plaintiff's property. Thus, plaintiff failed to demonstrate an inverse condemnation, particularly in light of the lack of an appropriate evidentiary response to defendant's proofs. *McCoig Materials, LLC*, 295 Mich App at 693.

2. Application of *Penn Central*

-11-

In *Chelsea Inv Group LLC v City of Chelsea*, 288 Mich App 239, 261-262; 792 NW2d 781 (2010), this Court delineated the "Penn Central" factors:

> Both Takings Clause of the Fifth Amendment of the United States Constitution and Const 1963, art 10, § 2 prohibit the taking of private property for public use without just compensation. *Cummins v Robinson Twp*, 283 Mich App 677, 706; 770 NW2d 421 (2009). The Takings Clause do not prohibit the government's interference with a private individual's property, but require that interferences amounting to a taking be compensated. *Id*. Typically, the government takes private property through formal condemnation proceedings. See *Dorman v Clinton Twp*, 269 Mich App 638, 645; 714 NW2d 350 (2006). However, governmental regulations that overburden a property may also constitute a compensable taking. *K & K Constr, Inc v Dep't of Natural Resources*, 456 Mich 570, 576; 575 NW2d 531 (1998). Regulatory taking claims that do not rise to the level of a categorical taking are governed by the standard set out in *Penn Central Transportation Co v New York City*, 438 U.S. 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978). The balancing test announced in that case requires a reviewing court to engage in an ad hoc factual inquiry, focusing on "(1) the character of the government's action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-backed expectations." *K & K Constr*, 456 Mich at 577, quoting *Penn Central*, 438 U.S. at 124. "While there is no set formula for determining when a taking has occurred under this test, it is at least 'clear that the question whether a regulation denies the owner economically viable use of his land requires at least a comparison of the value removed with the value that remains.' " *K & K Constr*, 456 Mich at 588 (citation omitted). Moreover, a mere reduction in the value of regulated property is insufficient by itself to establish that a compensable taking has occurred. *Penn Central*, 438 U.S. at 131; *Dorman*, 269 Mich App at 647.

> We agree with the trial court that plaintiff has not satisfied the *Penn Central* test. "The relevant inquiries regarding the character of the government's action is whether it singles [a] plaintiff[] out to bear the burden for the public good and whether the regulation being challenged 'is a comprehensive, broadly based regulatory scheme that burdens and benefits all citizens relatively equally.' " *Cummins*, 283 Mich App at 720 (citation omitted).

Thus, the test of *Penn Central* requires examination of "(1) the character of the government's action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-backed expectations." Plaintiff failed to meet the criteria of this test. Although defendant applied conditions to the SEUP, the trial court did not make a finding that the character of defendant's actions was preclusive or premised on animus designed to sabotage the project. Plaintiffs' employees alleged that planning commission chairman Stanley Brueck was against the project and vowed to preclude its operation in defendant township. However, irrespective of any alleged opposition to the project, defendant retained independent firm McKenna Associates to evaluate the project and recommendations were made to approve the project with conditions. Brueck was not the sole decider of the issue, and the planning commission as a whole granted the SEUP with the conditions recommended by McKenna

Associates. Thus, the character of defendant's actions does not indicate a plot to preclude or sabotage plaintiff's proposed use of the property.

Additionally, plaintiff failed to show the economic effect on the property with preserved, admissible documentary evidence.[5] Plaintiff made blanket allegations regarding the cost of the conditions imposed. However, despite the conditions itemized in the complaint, plaintiff did not produce an expert opinion regarding the cost of those items to create a genuine issue of material fact regarding diminution of value as a result. This absence of evidence also precluded an analysis of interference with plaintiff's investment backed expectations. Thus, irrespective of plaintiff's disagreement with the trial court's analysis of *Penn Central*, the summary disposition standard and the three-factor test required plaintiff to present evidence to support the factors, and it did not do so. Therefore, the trial court did not err in granting summary disposition to defendant.

### 3. Doctrine of Unconstitutional Conditions

Plaintiff also seemingly asserted that summary disposition was inappropriate because of the doctrine of unconstitutional conditions. In *AFT Mich v State*, 497 Mich 197, 225-228; 866 NW2d 782(2015), our Supreme Court delineated the doctrine:

> Individuals may under most circumstances voluntarily waive their constitutional rights. Individuals also have no constitutional right to receive any particular governmental benefits. *Falk v State Bar of Mich*, 411 Mich 63, 107; 305 NW2d 201 (1981) (opinion by RYAN, J.), quoting *Elrod v Burns*, 427 U.S. 347, 361; 96 S Ct 2673; 49 L Ed 2d 547 (1976). However, under limited circumstances, the government may be prevented from *denying* a benefit to an individual because that person has exercised a constitutional right; this is known as the "doctrine of unconstitutional conditions." *Dolan v City of Tigard*, 512 U.S. 374, 385; 114 S Ct 2309; 129 L Ed 2d 304 (1994). Not every condition attached to a governmental benefit is an unconstitutional one, and although the exact boundaries of the doctrine are difficult to define, the fundamental principle underlying the doctrine is clear: the governmental cannot attach conditions to government benefits that effectively *coerce* individuals into relinquishing their constitutional rights.

> The United States Supreme Court has applied the doctrine of unconstitutional conditions to claims arising under the Takings Clause of US Const, Ams V and XIV and has created a specific test of sorts: a governmental benefit given in exchange for a seemingly voluntary transfer of private property interests to the government may violate the doctrine of unconstitutional conditions if the condition lacks a nexus between the burden that the condition imposes on the property owner and the government's interest advanced by the condition, or if the burden that the condition imposes is not roughly proportionate to the governmental interest advanced by the condition. Thus far, the Court has only applied this test in

---

[5] This Court granted defendant's motion to strike exhibits that were not properly submitted in the lower court record. *Three Rivers Metal Recycling, LLC v Twp of Fabius*, unpublished order of the Court of Appeals, entered July 9, 2019 (Docket No. 347583).

the context of "land-use decisions conditioning approval of development on the dedication of property to public use." *City of Monterey v Del Monte Dunes at Monterey, Ltd*, 526 U.S. 687, 702-703; 119 S Ct 1624; 143 L Ed 2d 882 (1999).

> This Court has never applied the doctrine of unconstitutional conditions to Const 1963, art 10, § 2. Because plaintiffs have not argued that we should analyze their unconstitutional conditions argument in a manner in any way distinct from the United States Supreme Court's application of the doctrine to claims arising under US Const, Ams V and XIV, we decline to do so here[.]

Again, plaintiff delineates caselaw holdings, but did not obtain expert opinions and evidence and apply that evidence to the legal doctrines cited. The doctrine of unconstitutional conditions precludes a government from denying a benefit to an individual exercising a constitutional right by attaching unconstitutional conditions that coerce individuals to relinquish their rights. *Id*. However, this doctrine is inapplicable to the facts at hand. Although defendant imposed conditions on the SEUP, it did not coerce plaintiff to relinquish constitutional rights. Rather, zoning laws are established by statute and require that the unit of government act within the confines of the public good. To ensure that zoning meets the unit of government's needs, there are planning commissions and zoning boards that evaluate a landowner's request to vary or acquire a special use for zoned land. Further, there is an appeal process for any disagreement that arises as a result of the zoning decision. Here, plaintiff went through the local administrative process with the planning commission and the zoning board. These entities did not impose conditions on the property and require that plaintiffs relinquish their legal right to appeal their decision in order to obtain the SEUP. Under the circumstances, plaintiff failed to demonstrate the trial court erred in granting summary disposition.

### 4. "As Applied" Challenge

Lastly, plaintiff alleged that the trial court improperly failed to address an "as applied" legal challenge. However, this challenge was waived because it was not raised in the statement of questions presented. *Seifeddine v Jaber*, 327 Mich App 514, 521; 934 NW2d 64 (2019); MCR 7.215(B)(5).

In summary, although plaintiff challenged the trial court's decision, it delineated legal principles without obtaining expert opinions addressing diminution in property value and applying those opinions to the legal tests for determining inverse condemnation and taking. Therefore, plaintiff also failed to meet the burden of demonstrating a genuine issue of material fact. Accordingly, the trial court properly granted summary disposition pursuant to MCR 2.116(C)(10).

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle